Laramore, Judge,
delivered the opinion of the court:
Plaintiff, sues to recover back pay, contending that her dismissal, pursuant to a reduction-in-force proceeding, was defective.
*419Effective January 29,1951, plaintiff was given a temporary appointment to the position of Educationist, grade GS-9, in the Federal Security Agency, Office of Education.1 In September 1951, plaintiff was promoted in grade to GS-11, and the appointment became an indefinite appointment.
In her GS-11 position in 1952, plaintiff was primarily involved in processing candidates. On December 17, 1952, the division was reorganized into, six branches. As a result of this reorganization, the administrative functions were separated from the recruitment functions, and a special administrator was assigned at grade GS-12. Since plaintiff’s work had been administrative, she was left without work to perform. Consequently, she was at that time subject to a reduction-in-force notice. However, she was instead assigned to another position in the comparative education branch of the division. At that time plaintiff was told that this position could not be a permanent one.
On May 12, 1953, the Chief, Personnel and Organization Section of the Department of Health, Education and Welfare, 'by letter informed plaintiff as follows:
The reorganization of the Division of International Education on December 17, 1952, abolished the Technical Assistance in Education Section and assigned the functions involved in the Technical Assistance Program to other parts of the Division. The net effect was that your position as Research Assistant, GS-11, was abolished. In an effort to avoid recourse to reduction-in-force, you were detailed to the Comparative Education Branch with the expectation that a suitable position might develop. _ Unfortunately, such a position has not developed, and it becomes necessary to revert to the situation which existed because of reorganization. Inasmuch as the Office does not have any vacant positions suitable to your training and experience, I regret that we ■must inform you that your separation through reduction-in-force under the civil service rules and regulations will be made effective June 12, 1953. You will be carried on the roll in duty status to the close of business June 12,1953, and then separated and paid a lump sum for all annual leave standing to your credit.
This action is taken in accordance with Civil Service Retention Preference Regulations. You may inspect *420the retention register and the Civil Service Commission’s regulations on reduction in force if you desire to do so in the Personnel and Organization Section, Eoom 4737. I will be glad to answer any questions you may have concerning reduction-in-force. If you feel that there has been a violation of your rights under these regulations, you have the right to appeal to the Civil Service Commission, Washington 25, D.C., within ten days of receipt of this notice. The determination of activities or positions to be eliminated, however, is not subject to appeal to the Civil Service Commission.
I sincerely regret that this action is necessary and wish to thank you for your contribution to the work in the Office of Education.
The above-quoted letter was amended by two subsequent letters, whereby the effective date of plaintiff’s separation was extended to July 14, 1958, at which time plaintiff was finally separated.
Plaintiff had appealed her reduction in force to the Civil Service Commission on May 21, 1953, which appeal was pending on the date of her separation. The grounds of plaintiff’s appeal were set forth in her appeal letter as follows:
1. I should have been told in December 1952 that the job I was holding was being abolished. Instead, I was led to believe that I was being reassigned to the Comparative Education Branch because of my knowledge of Spanish.
2. I was assured by Mr. Oliver Caldwell, Chief of the International Division, and by Mr. Arnold Scott, his Assistant, that the position into which I was transferring was not of a temporary nature. I feel, in the light of the action above that they did not act in good faith when they told me this.
3. Mr. Scott did not act in good faith, I believe, in January 1953 when I went to him to inquire why I had not received a copy of the personnel journal action noting my change of assignment. His excuse was that the Personnel Office had so many changes to make that they had not gotten around to me.
4. I feel that I was doing a good job in the position which I held on December 16, 1952, and that I should have been allowed to remain in it as I requested. When Dr. Wayne Eeed returned from his trip to the Near East and addressed the Office of Education Personnel *421in September 1952, he said that during his travels my name had been mentioned several times by Technical Assistance field personnel as one who had gone above and beyond the call of duty to do a commendable job. He went on to say that service like this made for good international relations.
5. The position which I held on December 16 was upgraded to grade GS-12 to make a place for Mr. Charles Dawson, who had been working on the roster of scientific personnel which was being closed out. My position was not really abolished. I turned over my work and records to Mr. Dawson, who, by the way, is an able operator, and I have no fault to find with him. He had come into our program only a few weeks before December 16,1952.
6. I feel that the action taken in my case was in the nature of a reprisal for telling the truth to: Mr. Glenn Schriver, member of the Operations Committee of Congress, who called me in for an interview; Mr. Charles White, Public Health Official, who as an organization and methods examiner assigned to study our procedures, interviewed members of our staff; and Mr. H. C. Chris-toferson and Mrs. Mary Page Spinning who as a team from the Personnel Division came around to study our operations. (Mrs. Spinning was from the Baltimore Office, OSI.) In April 1952, shortly after Mr. Lane Ash came into our Technical Assistant [sic] Branch, he called me into his office and said that if I criticized the staff to members outside our groups, they would take drastic action.
7. We are now faced with reduction-in-force because many more professional personnel and their secretaries were brought into the Technical Assistance Program than were necessary. Many of them were brought in while Dr. Wayne Eeed was immediately in charge. In November 1951, the operations were being run by a GS-12, a GS-11 and two secretaries. We needed additional clerical help and two professionals — one experienced person to head up the program and one to orient field personnel and maintain liaison with them. What we actually took in, is here listed together with the approximate classifications, dates of entry, and comment, if any:
Dr. Ealph Bedell, February 1952, GS-14. No previous Government experience. Edna Booher, GS-4 or 5, secretary.
Mr. Fred Dominski, March 1952, GS-5, clerical position.
*422Mr. Lane C. Ash, March or April 1952, GS-14. Maria Oliver, GS-3, acting secretary; later Shirley Johnson became his secretary and Miss Oliver started the research work for which she was originally appointed.
Mr. A. D. Langley, April 1952, GS-13. Nancy Summers, GS-3, secretary.
Mr. George Stiff, April 1952, GS-11. No secretary.
Mr. Frank Sievers, April or May 1952, GS-12 or 13. Jane Guthrie, GS-3, secretary.
Mr. Walter J. Greenleaf, June 1952, GS-13. Jeral-dine Larson, GS-3, secretary.
Mr. Arnold Scott, April 1952, GS-14. Ann O’Neil, GS-4, secretary. However, only part of Mr. Scott’s time is devoted to the Technical Assistance Branch.
Mr. Raymond Gibson, GS-14, November 1952. Beatrice Graham, GS-4 or 5, secretary.
Mr. Charles Dawson, GS-12, November or December 1952. Patricia Goings, GS-3,. secretary.
8. I do not believe that contributing to the Democratic Committee should be a condition of Federal employment.
Some years back, while I was employed at the Navy Department, I received several requests from the National Democratic Committee for contributions, requests which I ignored. Since that time I have met with many obstacles. Of course, I cannot prove that my failure to contribute was the cause of my difficulties. However, I would like to relate two incidents that happened shortly thereafter.
I had a position lined up in the Central Intelligence Agency in the office of Dr. Clark H. Yeager who seemed very eager to have me. I had been cleared for “top secret” at the Navy Department and after waiting three months for clearance I went to Mr. Edward Daugherty in CIA personnel to find out how much longer it would be. He said that the FBI loyalty report was favorable and I should receive a full report in a few days. On the same day, I went to see Dr. Yeager. Among other things he asked me if I knew any other people with background similar to mine whom he could consider for another GS-11 position. A few days after this, I received word from the Personnel Office, CIA, that the job for which they were considering me had been abolished. I tried to see Admiral Roscoe H. Hillenkoetter to see what I could do to clear my record because I felt that I was being ruled out for spurious reasons. I was never able to obtain an interview.
Shortly after this, I succeeded in locating another position in the State Department in the office of Mr. Herbert *423H. Edwards (Mrs. India Edwards’ husband), under the immediate supervision of Mr. Anthony Guarco. This position also required clearance. Therefore, in order not to waste time for that office, thinking they had an employee lined up, and for me, thinking I had a position waiting for me, I told them of my experience with CIA. Shortly after that I received notice from the State Department that the position for which they were considering me was transferred to New York. When I told them I was willing to go to New York, they said that the requirements had changed. At this point I tried to see Mr. Jack McFall in the State Department, who is a friend of a friend of mine, but he refused to see me.
I then accepted a temporary position with the Labor Department at a GS-9.
9. I think that I should receive consideration for the GS-11 position in our Division in the Teacher Program Branch, Dr. Thomas Cotner, Director, a position soon to be vacated by Miss Clara McMahon. Miss Florence Jenkins in Personnel said that I could not qualify because I have not had teacher training experience.
I have had 4 years of teaching experience in Senior High School. Mr. Belmont Farley, Director of Public Relations, NEA, was Principal of the High School in Cape Girardeau, Mo., where I taught two years. He will, no doubt, remember me and the quality of my work.
In addition, I would like to point out that while I was a Junior in Southeast Mo. State Teachers College, Cape Girardeau, Mo., I was assigned to teach first year German to college students. I must have shown outstanding qualifications for teaching or I would not have been selected for such an assignment at the age of 17.
10. Because of my knowledge of German and my previous experience working with German Leaders, while employed by the Labor Department, I think that I should have consideration for any vacancies which exist in our Division in the Leaders and Specialists Programs Branch, Mr. Paul Bodenman, Director. A short time back, there were openings there.
11. I do not believe that the Department of Health, Education, and Welfare is interpreting correctly the term “interchangeable position” as found in the bumping procedures.
_ When I asked Miss Florence Jenkins, Personnel Division, about my bumping possibilities, she said that my bumping rights were restricted to this Division or any other Division which required security clearance. She said that I could not bump anyone who was not required *424to have clearance because the positions would not be considered interchangeable.
12. In conclusion, I would like to say that I do not think it is just to juggle and reorganize me out of my job to make room for “in-favor” employees who have been caught in reduction-in-force in other Divisions of the Office of Education. Recently, Dr. Raymond Gregory and Mr. Donald Schook have come into our Division.
On June 10,1953, plaintiff wrote further to the Civil Service Commission concerning her appeal as follows:
This amends my letter of May 21, 1953, in which I appealed the reduction-in-force action proposed by the Personnel Office, Office of Education, Department of Health, Education, and Welfare, in their letter to me of May 12, 1953, a copy of which was enclosed with my appeal.
I feel that I have displacement rights to the position now held in the Division of International Education (the Division in which I am working) by Miss Clara McMahon, classified as Educationist (General),_ GS-1720-11-3026. My position is classified as Educationist (General) GS-1720-11-2935.
Miss McMahon has had one and one-half years of government service; I have had 11 years. Neither of us has Civil Service status or veterans preference. _
_ I would rather not exercise my displacement rights, assuming that I have some, if written assurance can be given to me that I will be placed in Miss McMahon’s position when she resigns on June 30, effective July 31. I do not mind taking leave without pay for that part of July not covered by my accumulated annual leave, but I do object to being terminated on June 30.
On July 7, 1953, the Chief, Washington Recruiting Branch, Civil Service Commission, wrote plaintiff in part as follows:
Reference is made to your appeal, dated May 21,1953, of the reduction-in-force action taken in your case by the Office of Education, Department of Health, Education and Welfare, where you are employed as a Research Assistant, GS-11.
A review of your case has failed to disclose any irregularities under the terms of the Retention Preference Regulations.
The monitoring of your qualifications through the Department of Health, Education and Welfare was re*425checked. No continuing positions which are held by employees in retention subgroupings lower than your own and for which you are qualified under the terms of the Eegulations were located.
In your letter of appeal, you inquired about the possibility of being reassigned to the position presently occupied by Miss Clara McMahon. We have been informed by the Office of Education that Miss McMahon has resigned her position and that another employee, in subgroup I-B, is being assigned to the position. There are no other GS-11 level positions in the Office of Education which are held by employees in subgroup III-B and which should possibly have been considered as being in the same competitive level as your position.
* * * * *
In view of the above, we are obliged to inform you that there is no basis upon which your appeal may be sustained.
Miss Clara McMahon resigned from her position effective July 31,1953.
After further appeal the Board of Appeals and Review of the Civil Service Commission held that plaintiff’s position was interchangeable with the McMahon position and that plaintiff should have been retained over Miss McMahon. This action was dated November 2,1953. The Board recommended that plaintiff be restored retroactive to July 15,1953, the day following her improper separation to the position of Educationist, GS-11, and carried on the roles in that position until such date as she would have been separated subsequent to the separation of Miss McMahon by proper consideration of her (plaintiff’s) superior retention rights.
On November 6, 1953, the Executive Officer of the Office of Education issued two notices of personnel action concerning plaintiff. The first was the restoration of plaintiff effective July 15,1953, as a result of plaintiff’s appeal. The second was a reduction in force effective July 31, 1953.
The Civil Service Commission was notified on November 10, 1953, that plaintiff had been restored for the period July 15-31, 1953, inclusive, to the position from which she had been removed. The remedial letter stated in part as follows:
Since Miss Clara McMahon was separated at the close of business July 31, 1953, we have taken action on your recommendation and separated Miss Umbeck on the *426date she would have been separated due to her superior retention rights.
Thereafter on December 3,1953, plaintiff was re-employed by the agency as an Educationist Eesearch Assistant in grade GS-9, at a salary of $5810 per year.
Sometime in 1954 the plaintiff requested, in writing, a hearing before a grievance committee of the Department of Health, Education, and Welfare, in which she requested restoration of enforced annual leave from July 2-14, 1953, and also salary to which she claimed entitlement from July 31, 1953, to December 2,1953, “the date on which I was restored to duty after being deprived of my position through administrative errors as substantiated by the reinstatement letter.”
Apparently a hearing committee was appointed to consider the plaintiff’s grievance and a hearing was held on November 4, 1954, and the committee’s report to the Commissioner of Education was adverse to plaintiff’s requests. The Commissioner of Education confirmed the committee report. The plaintiff appealed to the Secretary of Health, Education and Welfare who, on June 2, 1955, sustained the decision of the Commissioner of Education.
On July 27, 1955, plaintiff, through counsel, appealed to the Board of Appeals and Eeview of the Civil Service Commission, and on August 26,1955, the Chairman of the Board advised plaintiff’s attorney by letter that since plaintiff did not, within a reasonable time, file objection with the Commissioner to the Agency’s interpretation of the corrective action required, her case was considered closed.
After further communication between plaintiff’s counsel and the Board of Appeals and Eeview, the Chairman of that Board wrote to plaintiff’s counsel on January 24, 1956', in part as follows:
* * * * #
The Commissioners, after personally considering your representations in the light of all the evidence of record presented in Miss Umbeck’s case, have decided that no substantial basis exists for reopening this case for further consideration. Accordingly, they have denied your request in this connection, and the previous action remains unchanged.
By direction of the Commission:
*427The plaintiff has been employed in the Office of Education continuously since December 3, 1953.
Plaintiff contends first that her dismissal herein was illegal and invalid since the Agency failed to give her the required written advance notice of the abolishment of her positions in violation of the Lloyd-La Follette Act, 5 U.S.C. 652, et seq.
The short answer to the above contention is this: Plaintiff was not in the classified civil service and was not entitled to the protection of the Lloyd-La Follette Act, supra. This is manifest from her own testimony. She was interrogated as to all positions held prior to her appointment on January 29, 1951, and in each instance answered that she did not have permanent status and was caught in a reduction. Effective January 29, 1951, plaintiff was given a temporary appointment. In September 1951 plaintiff was promoted and the appointment became an indefinite one.2 Thus, all plaintiff ever had was a temporary or an indefinite appointment and under such was not in the classified civil service thereby entitling her to the protection of the Lloyd-La Fol-lette Act, supra. She was not a veteran and therefore was properly classified on the retention register as a Group III-B employee. A Group III-B employee under the regulations is a non-status employee who is not a veteran.
Plaintiff in support of her contention that she is entitled to the protection of the Lloyd-La Follette Act, cites the case of Roth v. Brownell, Jr., 215 F. 2d 500. Roth, however, had previously acquired civil service status and was notified of his removal without reasons given therefor. The court in the Both case merely held that the executive order “excepting” the position held did not obviate the requirement of the Lloyd-La Follette Act. Here, as previously stated, plaintiff had never acquired civil service status. A similar situation exists in all other cases cited by plaintiff; i.e., in the case of Kirby v. United States, 140 Ct. Cl. 92, plaintiff was a veteran having classified civil service status. In Newman v. United States, 143 Ct. Cl. 784, plaintiff was a veteran having a classified civil service status. In Casman v. United *428States, 143 Ct. Cl. 16, plaintiff was a veteran and entitled to the protection of the Veterans’ Preference Act.
The only right plaintiff had under the regulations, was the right to bump employees within the same subgroup III-B who had less service credits than plaintiff. The facts here show that the only employee with less retention rights than plaintiff was Miss Clara McMahon. Miss McMahon separated from the service as of July 31,1953, and plaintiff was restored and paid up to and including July 31, 1953. Inasmuch as Miss McMahon was no longer in the service, it is plaintiff’s burden to show that some person was retained who had less retention rights. Since the record fails to show any such person, plaintiff’s reduction must be sustained.
Furthermore, under the reorganization of the agency the position held by plaintiff was no longer in existence. The facts show that plaintiff’s duties were of an administrative nature. Under the reorganization a new GS-12 position was set up to handle all administrative matters within the agency. We can find nothing arbitrary, unreasonable, or mischievous in this executive action, and the facts do not warrant a conclusion that the action was aimed at plaintiff for the purpose of getting plaintiff off the rolls. As a matter of fact, it would be absurd to make such an assumption. Certainly it was not necessary to completely reorganize the agency in order to separate plaintiff when the agency could have discharged her with or without cause at any time, she having no civil service status. Higgins v. United States, 133 Ct. Cl. 960; Denning v. United States, 132 Ct. Cl. 369; Chollar v. United States, 130 Ct. Cl. 338. In any event the decisions are legion, holding that the courts will not inquire into the merits of such an executive decision, especially when the executive action is not arbitrary. Eberlein v. United States, 257 U.S. 82; Adams v. United States, 137 Ct. Cl. 52, cert. denied, 353 U.S. 977; Carter v. Forrestal, 175 F. 2d 364, 365, cert. denied, 338 U.S. 832.
Plaintiff then contends that the position occupied by plaintiff was merely transferred to another division within the agency and plaintiff should have been transferred with the position. This is not quite the fact. As stated previously, under the reorganization a new upgraded position was *429created to handle all administrative duties previously-handled by plaintiff. This again was a completely normal executive function and decision, the merits of which the courts will not review. Furthermore, it is the function of the agency rather than the court to make promotions, and to allow plaintiff to recover on this theory would be in effect granting a promotion to plaintiff. It is well settled that this court’s jurisdiction extends only to the granting of a monetary judgment. United States v. Jones, 131 U.S. 1; United States v. Alire, 6 Wall. 573; Hart v. United States, 91 Ct. Cl. 308.
Plaintiff next contends that she was illegally detailed in order to deprive her of her position and assign the same to a new employee.
We find no merit in this contention. A temporary assignment was made in an effort to aid plaintiff; i.e., to see if a new position would develop for her. When a new position did not develop, notification of the reduction-in-force proceedings was promptly served on plaintiff. She received notice of her proposed removal on May 12, 1953 and was removed July 14,1953. The May 12 notice stated the reasons for her proposed removal, and since she was actually entitled to no notice, we cannot see how plaintiff can now complain.
For the reasons stated above, we conclude that plaintiff not having civil service status, is not entitled to the protection of the Lloyd-La Follette Act. There was nothing arbitrary in the reorganization of the agency whereby plaintiff’s position was abolished. No person with lower retention rights than plaintiff was retained when plaintiff was dismissed. Plaintiff was not illegally detailed in order to deprive her of her position and assign the same to a new employee. Consequently, plaintiff’s petition must be dismissed.
It is so ordered.
Littleton, Judge {Ret.); MaddeN, Judge; Whitakek, Judge; and JoNes, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner William E. Day, and the briefs and argument of counsel, makes findings of fact as follows:
*4301. The plaintiff is a citizen of the United States, and a resident of the District of Columbia.
2. The plaintiff, a non-veteran, entered Government employment in 1942, first with the War Production Board, and thereafter with other Government agencies, with intervals of short duration during which she was not so employed.
3. Effective January 29, 1951, the plaintiff was given a temporary appointment, not to exceed April 28, 1951, to the position of Educationist (Exchange of Professors, Teachers and Students-International) grade GS-9 (Eesearch Assistant) , at a salary of $5,350 per annum, in the Federal Security Agency, Office of Education.
4. In September 1951 the plaintiff was promoted in grade to GS-11, and the appointment became an indefinite appointment. Plaintiff heretofore did not have civil service status and did not by this appointment gain civil service status.
5. In 1953, this plaintiff was placed in the position where “a reorganization had worked her out of a position * *
6. The Federal Security Agency was in the process of being reorganized into the Department of Health, Education and Welfare. This became effective on April 11, 1953. Eeorganization Plan No. 1 of 1953 was transmitted to the Congress on March 12,1953.
7. A survey of the Division of International Education was made by a team of seven persons designated by the Commissioner of Education. This division had been in existence as such since June 1952. The survey took place sometime between August 25 and October 1952 because the report of the survey team was presented sometime in October of that year. Mr. Arnold Scott, a member of the survey team, is presently assistant to the assistant commissioner. The latter is head of the Division of International Education. Scott was executive officer at the time of the survey.
8. The report of survey reads in part as follows:
Eecruitment of personnel by the Office for overseas missions should be more aggressive in seeking qualified candidates than has been feasible in the past, with maximum use being made of the 90-day period allowed under Point IV security provisions, for orientation purposes. The present practice of building up a pool of security-*431cleared applicants is costly and time consuming. This pool could be justified when the program was new and security clearance was an absolute requirement prior to appointment, but now it appears to be ineffective and inefficient. It also seems desirable that the recruitment officers be professional personnel of wide acquaintance, capable of developing interest in candidates for overseas assignments as well as of enlisting the cooperation of those school superintendents, deans, and presidents who are required to approve leaves of absence.
# * « $ *

Recommendations

1. In order to improve the administrative operations within the Division of International Education, administrative activities should be concentrated within an Administrative Branch by (1) centralizing certain activities now performed in the program branches, and (2) decentralizing from the Fiscal Service, Office of Education, the issuance of travel authorizations and transportation requests. The Administrative Branch would issue travel authorizations, travel requests, obtain tickets and make reservations for all but administrative personnel and initiate appointment actions of Point IV personnel. It may be necessary for the Administrative Branch to maintain certain memorandum accounts, but basically it is intended that the accounting, auditing and payrolling activities continue to be performed by the Fiscal Service.
In order to staff the proposed Administrative Branch in the Division it will be necessary to arrange for a distribution of manpower in accordance with any redistribution of workload. Also, it will be necessary to provide for a person with competent administrative experience, specifically with regard to travel, fiscal, and appointing processes to serve under the Branch chief. This employee also would be responsible for the general administrative services' of the Division. • There should also be a competent travel clerk and the necessary clerical-assistance. - •
2. The functions of the Administrative Branch should include the following:
a. Furnish staff assistance to the Division head in the organization and management of the Division’s programs and coordination of their administrative aspects.
b. Develop and control the Division budget.
_ c. Assume responsibility for personnel administration, for travel, fiscal, clerical and service activities and personnel of the Division. .'•
*4328a. The recommended organization went into effect on December 17,1952. Immediately prior to December 17,1952, the bulk of Miss Umbeck’s time and energy was going into the processing of candidates rather than recruitment. At the time the recruitment was being handled by highly qualified professional educators who had been brought in to bolster the Point Four program. Plaintiff’s educational qualifications were limited to an A.B. in Modem Languages, G.W.U., 1923, and graduate work in English in 1924. Moreover, she had neither a master’s nor a doctor’s degree. For comparison purposes the Teacher’s Program Branch was employing PHD’s with experience at a grade GS-11. It was felt that Miss Umbeck did not have the extensive personnel, fiscal and administrative experience that was necessary for the separate administrative position which was being established at a grade 12. To fill this higher position, Mr. Charles Dawson was assigned on the basis of his extensive administrative experience in personnel operations.
9. On December 16, 1952, the assistant commissioner issued staff memorandum No. 5 which reorganized the Division of International Education “to carry out the intent and make effective the basic recommendations included in the survey report of the Division. * * The memorandum stated that because of the need for assuring continuity in administration of its programs, and limitations of floor space, it was impracticable to make a complete reassignment of personnel and adjustment of space. The organization of the division into six branches, and the assignment of branch directors were made effective December 17,1952, and the complete reorganization of the Division of International Education was to be accomplished “through somewhat of an evolutionary process.”
10. Because of this reorganization, on December 17, 1952, a reduction-in-force notice could have been issued to Miss Umbeck immediately, however, in an attempt to keep her employed the agency placed her on detail in the Comparative Education Branch. At this time Miss Umbeck was told that the assignment to the Comparative Education Branch would not injure her status as an employee, that her rights of tenure would be just as good after tins detail as they were *433then. Moreover, Miss Goodykoontz, tbe Director of the Comparative Education Branch, specifically notified plaintiff that her position within the Comparative Education Branch could not be a permanent one.
11. From December 17,1952, until July 14, 1953, plaintiff worked in the Comparative Education Branch. However, during this period she was carried on the rolls in the same Point IV position that she held prior to December 17. She was paid by funds transferred from TCA rather than from the appropriations allotted to the Office of Education under which the Comparative Education employees were paid. No position was established in the Comparative Education Branch for plaintiff. By May 12, since no new position had become available, and because of a lack of funds, such a position could not be created.
On May 12, 1953, the Chief, Personnel and Organization Section of the Department of Health, Education and Welfare (hereinafter referred to as HEW) sent the following letter to the plaintiff:
The reorganization of the Division of International Education on December 17, 1952, abolished the Technical Assistance in Education Section and assigned the functions involved in the Technical Assistance Program to other parts of the Division. The net effect was that your position as Eesearch Assistant, GS-11, was abolished. In an effort to avoid recourse to. reduction-in-force, you were detailed to the Comparative Education Branch with the expectation that a suitable position might develop. Unfortunately, such a position has not developed, and it becomes necessary to revert to the situation which existed because of reorganization. Inasmuch as the Office does not have any vacant positions suitable to your training and experience, I regret that we must inform you that your separation through reduction-in-force under the civil service rules and regulations will be made effective June 12, 1953. You will be carried on the roll in duty status to the close of business June 12,1953, and then separated and paid a lump sum for all annual leave standing to your credit.
This action is taken in accordance with Civil Service Eetention Preference Kegulations. You may inspect the retention register and the Civil Service Commission’s regulations on reduction in force if you desire to do so in the Personnel and Organization Section, Eoom 4737. *434I will be glad to answer any questions you may have concerning reduction-in-force. If you feel that there has been a violation of your rights under these regulations, you have the right to appeal to the Civil Service Commission, Washington 25, D.C., within ten days of receipt of this notice. ' The determination of activities or positions to be eliminated, however, is not subject to appeal to the Civil Service Commission.
I sincerely regret that this action is necessary and wish to thank you for your contribution to the work in the Office of Education.
12. The above-quoted letter was amended by another of June 3, by the terms of which the effective date of separation was extended to June 30,1953.
13. On June 30, 1953, the Chief, Personnel and Organization Section of HEW sent the following letter to the plaintiff:
This will modify and extend your reduction in force notice so as to set the close of business, July 14, 1953, as the time of separation. The period July 2 to July 14, 1953, inclusive, will be in an annual leave status; otherwise all other conditions stated in your reduction in force notice continue to apply. If your leave is not sufficient to carry you through July 14, you will be placed in a leave without pay status from the time your leave expires.
You will be notified immediately as to any developments affecting your status while you are in leave status. To this end, it will be appreciated if you will notify this office of the address and telephone number where you can be reached.
14. On July 15,1953, the plaintiff received a formal notification of personnel action by which she was removed from her position as Educationist (General) GS-11 (Eesearch Assistant), position number GS-1720-11-2935, at the salary of $6,340 per annum, by reduction in force action pursuant to Civil Service Eegulation 20.5. The retention register at the time notice was served upon plaintiff showed the following GS-ll’s in the competitive level of Eesearch Assistant (International) GS-1720-11-2935 and GS-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: George H. Stiff in group I-A, Ella Griffin in group I-B, Nelda E. Umbeck in group III-B.
*43515. On May 21, 1953, the plaintiff appealed her reduction in force by letter to the United States Civil Service Commission on the “grounds of violation of job rights, bad faith, irregularities of personnel actions and general management.” The specific instances on which the plaintiff based her appeal were as follows:
1. I should have been told in December 1952 that the job I was holding was being abolished. Instead, I was led to believe that I was being reassigned to the Comparative Education Branch because of my knowledge of Spanish.
2. I was assured by Mr. Oliver Caldwell, Chief of the International Division, and by Mr. Arnold Scott, his Assistant, that the position into which I was transferring was not of a temporary nature. I feel, in the light of the action above that they did not act in good faith when they told me this.
3. Mr. Scott did not act in good faith, I believe, in January 1953 when I went to him to inquire why I had not received a copy of the personnel j ournal action noting my change of assignment. His excuse was that the Personnel Office had so many changes to make that they had not gotten around to me.
4. I feel that I was doing a good job in the position which I held on December 16, 1952, and that I should have been allowed to remain in it as I requested. When Dr. Wayne Eeed returned from his trip to the Near East and addressed the Office of Education Personnel in September 1952, he said that during his travels my name had been mentioned several times by Technical Assistance field personnel as one who had gone above and beyond the call of duty to do a commendable job. He went on to say that service like this made for good international relations.
5. The position which I held on December 16 was upgraded to grade GS-12 to make a place for Mr. Charles Dawson, who had been working on the roster of scientific personnel which was being closed out. My position was not really abolished. I turned over my work and records to Mr. Dawson, who, by the way, is an able operator, and I have no fault to find with him. He had come into our program only a few weeks before December 16,1952.
6. I feel that the action taken in my case was in the nature of a reprisal for telling the truth to: Mr. Glenn Schriver, member of the Operations Committee of Congress, who called me in for an interview; Mr. Charles *436White, Public Health Official, who as an organization and methods examiner assigned to study our procedures, interviewed members of our staff; and Mr. H. C. Chris-toferson and Mrs. Mary Page Spinning who as a team from the Personnel Division came around to study our operations. (Mrs. Spinning was from the Baltimore Office, OSI.) In April 1952, shortly after Mr. Lane Ash came into our Technical Assistant [sic] Branch, he called me into his office and said that if I criticized the staff to members outside our group, they would take drastic action.
7. We are now faced with reduction-in-force because many more professional personnel and their secretaries were brought into the Technical Assistance Program than were necessary. Many of them were brought in while Dr. Wayne Eeed was immediately in charge. In November 1951, the operations were being run by a GS-12, a GS-11 and two secretaries. We needed additional clerical help and two professionals — one experienced person to head up the program and one to orient field personnel and maintain liaison with them. What we actually took in, is here listed together with the approximate classifications, dates of entry, and comment, if any:
Dr. Kalph Bedell, February 1952, GS-14. No previous Government experience. Edna Booher, GS-4 or 5, secretary.
Mr. Fred Dominski, March 1952, GS-5, clerical position.
Mr. Lane C. Ash, March or April 1952, GS-14. Maria Oliver, GS-3, acting secretary; later Shirley Johnson became his secretary and Miss Oliver started the research work for which she was originally appointed.
Mr. A. D. Langley, April 1952, GS-13. Nancy Summers, GS-3, secretary.
Mr. George Stiff, April 1952, GS-11. No secretary.
Mr. Frank Sievers, April or May 1952, GS-12 or 13. Jane Guthrie, GS-3, secretary.
Mr. Walter J. Greenleaf, June 1952, GS-13. Jeral-dine Larson, GS-3, secretary.
Mr. Arnold Scott, April 1952, GS-14. Ann O’Neil, GS-4, secretary. However, only part of Mr. Scott’s time is devoted to the Technical Assistance Branch.
Mr. Eaymond Gibson, GS-14, November 1952. Beatrice Graham, GS-4 or 5, secretary.
Mr. Charles Dawson, GS-12, November or December 1952. Patricia Goings, GS-3, secretary.
*4378. I do not believe that contributing to the Democratic Committee should be a condition of Federal employment.
Some years back, while I was employed at the Navy Department, I received several requests from the National Democratic Committee for contributions, requests which I ignored. Since that time I have met with many obstacles. Of course, I cannot prove that my failure to contribute was the cause of my difficulties. However, I would like to relate two incidents that happened shortly thereafter.
I had a position lined up in the Central Intelligence Agency in the office of Dr. Clark H. Yeager who seemed very eager to have me. I had been cleared for “top secret” at the Navy Department and after waiting three months for clearance I went to Mr. Edward Daugherty in CIA personnel to find out how much longer it would be. He said that the FBI loyalty report was favorable and I should receive a full report in a few days. On the same day, I went by to see Dr. Yeager. Among other things he asked me if I knew any other people with background similar to mine whom he could consider for another GS-11 position. A few days after this, I received word from the Personnel Office, CIA, that the job for which they were considering me had been abolished. I tried to see Admiral Eoscoe H. Hillenkoetter to see what I could do to clear my record because I felt that I was being ruled out for spurious reasons. I was never able to obtain an interview.
Shortly after this, I succeeded in locating another position in the State Department in the office of Mr. Herbert H. Edwards (Mrs. India Edwards’ husband), under the immediate supervision of Mr. Anthony Guarco. This position also required clearance. Therefore, in order not to waste time for that office, thinking they had an employee lined up, and for me, thinking I had a position waiting for me, I told them of my experience with CIA. Shortly after that I received notice from the State Department that the position for which they were considering me was transferred to New York. When I told them I was willing to go to New York, they said that the requirements had changed. At this point I tried to see Mr. Jack McFall in the State Department, who is a friend of a friend of mine, but he refused to see me.
I then accepted a temporary position with the Labor Department at a GS-9.
9. I think that I should receive consideration for the GS-11 position in our Division in the Teacher Program Branch, Dr. Thomas Cotner, Director, a position soon *438to be vacated by Miss Clara McMahon. Miss Florence Jenkins in Personnel said that I could not qualify because I have not had teacher training experience.
I have had 4 years of teaching experience in Senior High School. Mr. Belmont Farley, Director of Public Relations, NEA, was Principal of the High School in Cape Girardeau, Mo., where I taught two years. He will, no doubt, remember me and the quality of my work.
In addition, I would like to point out that while I was a Junior in Southeast Mo. State Teachers College, Cape Girardeau, Mo., I was assigned to teach first year German to college students. I must have shown outstanding qualifications for teaching or I would not have been selected for such an assignment at the age of 17.
10. Because of my knowledge of German and my previous experience working with German Leaders, while employed by the Labor Department, I think that I should have consideration for any vacancies-which exist in our Division in the Leaders and Specialists Programs Branch, Mr. Paul Bodenman, Director: Á short time back, there were openings there.
11. I do not believe that the Department, of Health, Education, and Welfare is interpreting correctly the term “interchangeable position” as found in the bumping procedures.
When I asked Miss Florence Jenkins, Personnel Division, about my bumping possibilities, she said that my bumping rights were restricted to this Division or any other Division which required security clearance. She said that I could not bump anyone who was not required to have clearance because the positions would not be considered interchangeable.
12. In conclusion, I would like to say that I do not think it is just to juggle and reorganize me out of my job to make room for “in-favor” employees who have been caught in reduction-in-force in other Divisions of the Office of Education. Recently, Dr. Raymond Gregory and Mr. Donald Schook have come into our Division.
16. On June 10, 1953, the plaintiff wrote further to the Civil Service Commission, concerning the appeal from her reduction in force, as follows:
This amends my letter of May 21, 1953, in which I appealed the reduction-in-force action proposed by the Personnel Office, Office of Education, Department of Health, Education, and Welfare, in their letter to me of May 12,1953, a copy of which was enclosed with my appeal.
*439I feel that I have displacement rights to the position now held in the Division of International Education (the Division in which I am working) by Miss Clara McMahon, classified as Educationist (General), GS-1720-11-3026. My position is classified as Educationist (General) GS-1720-11-2935.
Miss McMahon has had one and one-half years of government service; I have had 11 years. Neither of us has Civil Service status or veterans preference.
I would rather not exercise my displacement rights, assuming that I have some, if written assurance can be given to me that I will be placed in Miss McMahon’s position when she resigns on June 30, effective July 31.
I do not mind taking leave without pay for that part of July not covered by my accumulated annual leave, but I do object to being terminated on June 30.
17. On July 7, 1953, the Chief, Washington Kecruiting Branch, Civil Service Commission, sent the plaintiff a letter which reads in part as follows:
Eefereiice is made to your appeal, dated May 21,1953, of the reduction-in-force action taken in your case by the Office of .Education, Department of Health, Education and Welfare, where you are employed as a Eesearch Assistant, GS-11.
A review of your case has failed to disclose any irregularities under the terms of the Eetention Preference Eegulations.
The monitoring of your qualifications through the Department of Health, Education and Welfare was rechecked. No continuing positions which are held by employees in retention subgroupings lower than your own and for which you are qualified under the terms of the Eegulations were located.
In your letter of' appeal, you inquired about the possibility of being reassigned to the position presently occupied by Miss Clara McMahon. We have been informed by the Office of Education that Miss McMahon has resigned her position and that another employee, in subgroup I-B, is being assigned to the position. There are no other GS-11 level positions in the Office of Education which are held by employees in subgroup III-B and which should possibly have been considered as being in the same competitive level as your position.
In view of the above, we are obliged to inform you that there is-no basis upon which your appeal may be sustained. •. . •' • • -
*44018. On July 13, 1953 the plaintiff further appealed the reduction in force action to the Board of Appeals and Review, United States Civil Service Commission. This further appeal was grounded on the proposition that Miss Clara McMahon should have been the subject of the reduction in force action instead of the plaintiff since she was employed in a position which the plaintiff claimed to be interchangeable insofar as duties were concerned. Attention was called to the fact that Miss McMahon had resigned from the position June 30, effective July 31, 1953. Further, this appeal was grounded upon the proposition that within the same branch, where her GS-11 position was abolished, two new positions had recently been set up, one at the grade GS-12 and another at the grade GS-11.
19. On November 2, 1953, the Civil Service Commission, by John E. Blann, Chairman, Board of Appeals and Review, wrote to the Chief, Personnel and Organization Section, Office of Education, HEW, advising that official concerning the plaintiff’s appeal in the following terms:
Reference is made to an appeal submitted by Miss Nelda R. Umbeck from an initial decision within the Commission sustaining her separation on July 14, 1953, through reduction in force from her position of Educationist (General), GS-11, Office of Education, Department of Health, Education, and Welfare.
The Commissioners after making a careful study of all the facts in Miss Umbeck’s case have arrived at the conclusion that she was not properly reached for reduction in force. This is based upon the fact that it has been determined that her position and the position of Miss Clara McMahon were interchangeable and therefore should have been in the same competitive level, that Miss Umbeck had more retention credits than Miss McMahon, and that Miss McMahon therefore should have been reached for reduction in force before Miss Umbeck was reached. The action of separating Miss Umbeck while Miss McMahon was allowed to remain on the rolls was an error on the part of the agency. This being so, it is the decision of the Commissioners that Miss Umbeck’s separation by reduction in force on July 14, 1953, must be disapproved.
It is therefore recommended that Miss Umbeck be restored retroactive to July 15, 1953, the day following her improper separation, to tire position of Educationist *441(General), GS-11, and carried on the rolls in that position until such date as she would have been separated subsequent to the separation of Miss Clara McMahon by proper consideration of Miss Umbeck’s superior retention rights. Accordingly, it is requested we be advised within seven days of the date of receipt of this letter of the corrective action taken by your Department in Miss Umbeck’s behalf.
A copy of this letter is being forwarded to Miss Um-beck in order that she may be advised of the outcome of her appeal.
By direction of the Commission:
20. On November 6, 1953, the Executive Officer of the Office of Education issued two notices of personnel action concerning the plaintiff. The first was the restoration (from separation) effective July 15,1953, as a result of the plaintiff’s appeal from reduction in force. The second was a reduction in force effective July 31, 1953.
The effect of these two actions was to place the plaintiff on the payroll for two weeks beyond the time when she had been removed from the Government payroll.
21. On November 10, 1953, the Chief, Personnel and Organization Section, Office of Education, wrote to the Chairman, Board of Appeals and Eeview, Civil Service Commission, advising that on receipt of the Civil Service Commission letter of November 2, 1953 (quoted in finding 19), the plaintiff had been restored for the period July 15-31, 1953, inclusive, to the position from which she had been removed. The letter states in part as follows:
*****
Since Miss Clara McMahon was separated at the close of business July 31,1953, we have taken action on your recommendation and separated Miss Umbeck on the date she would have been separated due to her superior retention rights.
22. At the trial of this case, in response to questions asked by the commissioner, Arnold Scott, Assistant to the Assistant Commissioner, Office of Education, and head of the Administrative Branch in the Division of International Education, gave the following answers concerning the reason for the plaintiff’s reduction in force.
*442q * * =1= Doesn’t it seem singular that the plaintiff is told on the 12th of May that her position was abolished on the 17th of December of the year before ?
A. No, I don’t think, because at the time, about that time this paper was issued, the plaintiff was reassigned or detailed to another branch, with an understanding that we were attempting to work out something so that there would be a permanent job, or a regular job in that branch.
Q. Was that done in writing?
A. No, it was not done in writing. This was a detail.
Q. Was she told?
A. She was told. She was told that she was being detailed to this branch.
Q. Do you know that?
A. I told her.
Q. You told her?
A. Yes, I told her.
Q. When?
A. Well, as I say, it has to be along about the time that this organizational change took place.
Q. Well, tell us about that.
A. About the time that this organizational change took place, when we organized, we organized here an administrative branch. It was the first time there had been an administrative branch. The administrative branch was placed under my jurisdiction, besides my other responsibilities; and in setting up that branch the function which related to the recruitment of personnel for the Foreign Missions, which was then under the jurisdiction of TCA, later FOA, later IGA; the recruitment of those positions was turned over to this administrative branch of which I was the director, and the responsibility for recruitment was turned over to a person of higher grade.
The setting up of this position of higher grade eliminated the position that Miss Umbeck held, so that her position then became surplus. And, in order to avoid, or in an attempt to avoid the reduction-in-force notice to Miss Umbeck at that time, we decided to see whether we could work out an arrangement depending upon the obtaining of necessary funds. But at that time we decided we would continue her employment and place her on detail in the Comparative Education Branch, in a research assistant position. And hoping that we would be able to work out abona fide job.
At that time I told Miss Umbeck that this assignment to the Comparative Education Branch would not injure her status as an employee, that her rights, her rights of *443tenure and so on, would be just as good after this detail as they were then; so that we attempted to do that. But we were not able to work out a job — we did not have any basis for continuing it; so, as of this date in June, I guess it was, whenever that notice went to her, we reverted to her official employment station, her official employment on the record was to this other position, and we reverted to the status where the reorganization had worked her out of a job, and served her notice based upon that old job.
Q. And that’s your explanation for the manner in which the plaintiff found herself with this reduction-in-force notice ?
A. That’s it exactly.
23. The person who was given the grade GS-12 position in the Administrative Branch under Mr. Scott was Mr. Charles Dawson. The assignment of Mr. Dawson to this position is what eliminated the plaintiff’s position because he took over the work which had formerly been performed by the plaintiff in a different section. The assignment of Mr. Dawson, who was not a professional educator, was in contrast to the recommendation of the survey team (reported in finding 8) that the recruitment officers be professional personnel since this task involved recruitment.
24. The work that the plaintiff had been performing both prior to and after December 17, 1952, and up to the time of her reduction in force, did not diminish but was accomplished by Mr. Dawson after the reduction in force of the plaintiff.
25. Miss Clara McMahon resigned from her position voluntarily effective July 31, 1953. There is no evidence in the record that a reduction in force notice was to be given to Miss McMahon.
26. The duties of the McMahon position were reassigned to a Mrs. Crary, a grade GS-9 employee, who became employed by the Division of International Education, Teacher Programs Branch, Teacher Training Section, as an indefinite employee, effective January 5, 1953.
27. The plaintiff asked Mrs. Georgia McCoy, who was assistant to the Secretary of HEW, to intercede for her in connection with the reduction in force action. This was done at least as early as July 13,1953. As a result of inter*444cession on plaintiff’s behalf by Mrs. McCoy, the plaintiff was on December 3, 1953, reemployed as an Educationist Eesearch Assistant at grade GS-9 at a salary of $5,810 per annum.
28. Sometime in 1954 the plaintiff requested, in writing, a hearing before a grievance committee of the Department of HEW in which she requested restoration of enforced annual leave from July 2-14, 1953, and also salary to which she claimed entitlement from July 31,1953, to December 2,1953, “the date on which I was restored to duty after being deprived of my position through administrative errors as substantiated by the reinstatement letter.”
29. Apparently a hearing committee was appointed to consider the plaintiff’s grievance and a hearing was held on November 4, 1954, and the committee’s report to the Commissioner of Education was adverse to plaintiff’s requests. The Commissioner of Education confirmed the committee report. The plaintiff appealed to the Secretary of HEW who, on June 2, 1955, sustained the decision of the Commissioner of Education.
30. On July 27, 1955, the plaintiff, through counsel, appealed to the Board of Appeals and Eeview of the Civil Service Commission. On August 26,1955, the Chairman of the Board of Appeals and Eeview advised plaintiff’s attorney, by letter, that since the plaintiff did not, within a reasonable time, file objection with the Commission to the agency’s (HEW) interpretation of the corrective action required, her case was considered closed.
31. After further communication between plaintiff’s counsel and the Board of Appeals and Eeview, the Chairman of that Board wrote to plaintiff’s counsel on January 24, 1956, in part as follows:
* * * * *
The Commissioners, after personally considering your representations in the light of all the evidence of record presented in Miss Umbeck’s case, have decided that no substantial basis exists for reopening this case for further consideration. Accordingly, they have denied your request in this connection, and the previous action remains unchanged.
By direction of the Commission:
*44532. The plaintiff has been employed in the Office of Education continuously since December 3,1953.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and the petition is therefore dismissed.

 This later became the Department of Health, Education and Welfare under a reorganization effective April 11, 1953.

 While it is not spelled out in tie evidence or briefs, this must have been because of the so-called Whitten aider, 64 Stat. 1044, 1066.