William F. BIELEC
v.
The UNITED STATES.

John H. BLISARD
v.
The UNITED STATES.

Seldon VAN BUSKIRK
v.
The UNITED STATES.

Herbert MUKHALIAN
v.
The UNITED STATES.

Albert SCHOOLEY
v.
The UNITED STATES.

James A. SITLEY
v.
The UNITED STATES.

Phillip STEINMAN
v.
The UNITED STATES.

Nos. 110–67, 111–67, 112–67, 113–67, 114–67, 115–67 and 116–67.

United States Court of Claims.
March 17, 1972.

John Edward Sheridan, Philadelphia, Pa., for plaintiffs; Byron N. Scott, Washington, D. C., atty. of record. Van A. Stilley, Washington, D. C., of counsel.

Judith A. Yannello, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, LARAMORE, Senior Judge, and DAVIS, COLLINS, SKELTON, NICHOLS and KASHIWA, Judges.

ON PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

SKELTON, Judge.

The plaintiffs, William F. Bielec, John H. Blisard, Seldon Van Buskirk, Herbert Mukhalian, Albert Schooley, James A. Sitley, and Phillip Steinman, filed separate suits against the United States, which were consolidated for trial because all of them involved the same issues. The facts are stipulated by the parties.

The plaintiffs are all career civil service employees in the Department of Defense. They claim entitlement to promotions to higher grades and ranks in the service by reason of an alleged upgrading of positions they were temporarily occupying without a corresponding promotion of the plaintiffs to higher grades. They claim that such promotions are mandatory under the law. We have concluded that the plaintiffs are not entitled to recover.

The facts on which the plaintiffs base their claims are generally as follows.

On October 11, 1963, the Department of Defense directed a Pilot Test for the Defense Contract Administration Services Region (DCASR) and on November 30, 1963, designated Philadelphia, Pennsylvania, as the Pilot Test. On February 28, 1964, authorities were delegated and functional responsibilities were assigned to DCASR pilot test and DCASR became operative on April 20, 1964. Plaintiffs were detailed effective April 20, 1964, for a period not to exceed October 20, 1964, from the various military departments to DCASR, with duties commensurate with their former positions, as follows:

TABLE I

| Name | Former Regular Position | DCASR Detail Position |
|---|---|---|
| Bielec | GS-1104-11, Chief, Property Disposal Function, Administrative Services Office. | GS-1104-11, Property Disposal Office [served as Chief, Plant Clearance Branch Industrial Services Division]. |
| Blisard | GS-1903-12, Supervisory Quality Control Specialist. | GS-1150-13, Supervisory Quality Control Specialist [served as Chief, Control Branch, Quality Assurance Directorate, Planning and Review Division]. |
| Van Buskirk | GS-1150-13, Supervisory Industrial Specialist (General). | GS-1102-13, Supervisory Industrial Specialist (General) [served as Deputy Director of Production Directorate]. |
| Mukhalian | GS-1102-13, Supervisory Contract Price Analyst. | GS-1102-13, Supervisory Contract Price Analyst [acted as Chief, Financial Services Division]. |
| Schooley | GS-1102-12, Supervisory Contract Price Analyst. | GS-1102-12, Supervisory Contract Price Analyst [acted as Chief, Price Cost Analysis Branch]. |
| Sitley | GS-1102-14, Supervisory Contract Specialist. | GS-1102-14, Supervisory Contract Specialist [served as Deputy Executive Director]. |
| Steinman | GS-1104-9, Property Disposal Assistant. | GS-1104-9, Property Disposal Assistant [served as Plant Clearance Officer for region of Pittsburgh area and Western Pennsylvania]. |

[A5634]

On September 1, 1964, DCASR became a permanent field activity of the Defense Supply Agency. Effective November 1, 1964, plaintiffs were, because of a transfer of their functions, transferred permanently to DCASR.

On April 15, 1965, the first Joint Table of Distribution was issued and became effective for DCASR. This table organized for the first time on a permanent basis the positions and the personnel previously transferred to DCASR, including the plaintiffs, and those to be later placed in the agency. Upon the issuance of the Joint Table, the plaintiffs were assigned positions listed in the following table under the heading "Position Assignment Under Joint Table." (The plaintiffs had previously accepted positions with DCASR as shown under the heading "Position Assignment Effective November 1, 1964".) The plaintiffs were not satisfied with the assignments given to them under the Joint Table, but claimed they were entitled to assignments to higher positions as shown in the table below under the heading "Position Sought by Plaintiff:"

TABLE II

| Name | Position Assignment Effective November 1, 1964 | Position Assignment Under Joint Table | Positions Sought by Plaintiffs |
|---|---|---|---|
| Bielec | Job No. CR–36–S, GS–1104–11, Supervisory Property Disposal Officer [served as Section Chief, Plant Clearance Branch]. | Job No. CR–952–S, GS–1104–11, Supervisory Property Disposal Officer [served as Program Area Supervisor, Plant Clearance Branch]. | GS–12, Chief, Plant Clearance Branch. |
| Blisard | Job No. CR–599–S, GS–1903–12, Supervisory Quality Control Specialist [served as Branch Chief, Control and Analysis Branch of Plans and Review Div]. | Job No. CR–985, GS–1903–12, Quality Control Specialist Plans Branch (non-supervisory). | Job No. CR–984, GS–13 (Chief, Plans Branch) or Job No. CR–986–S, GS–13 (Chief, Program Branch). |
| Van Buskirk | Job No. CR–582–S, GS–1150–13 Supervisory Industrial Specialist (General) [served as Deputy Chief, Directorate of Production] [Duties as defined in CR–44–S]. | Job No. CR–939–S, GS–1150–13, Supervisory Industrial Specialist (General) [as Deputy Chief, Management and Procedures Division, Directorate of Production]. | Job No. CR–938, GS–15, Deputy Director, Directorate of Production. |
| Mukhalian | Job No. CR–134–S, GS–1102–13, Supervisory Contract Price Analyst [served as Deputy Chief, Financial Services Division]. | Job No. CR–16–S, GS–1102–13, Supervisory Contract Price Analyst [served as Chief, Price/Cost Analysis Branch. Directorate of Contract Administration]. | Job No. CR–84–S, GS–14, Chief, Financial Services Division. |
| Schooley | Job No. CR–22–3, GS–1102–12, Supervisory Financial Analyst [served as Chief Financial Analysis Branch]. | Job No. CR–14, GS–1102–12, Contract Price Analyst. | Job No. CR–885–S, GS–13, Chief, Financial Analysis Branch. |
| Sitley | Job No. CR–18–S, GS–1101–14, Contract Program Director [served as Deputy Chief, Contracts Administration Directorate]. | Job No. CR–68–S, GS–1102–14, Supervisory Control Administrator [Chief, Contract Administrative Operations Div.]. | Job No. CR–967–S, GS–15, Deputy Chief, CAD. |
| Steinman | Job No. CR–33–S, GS–1104–9, Property Disposal Officer [served as Plant Clearance Officer, Plant Clearance Branch, Industrial Services Division]. | Job No. CR–1070, GS–9, Plant Clearance Officer, Industrial Materials Support Division. | Job No. CR–952–S, GS–11, Property Disposal Officer. |

[A5635]

---

The plaintiffs appealed to the Philadelphia Regional Office of the Civil Service Commission by separate appeals. The Regional Office denied their appeals by

written opinions. The plaintiffs have summarized the decisions of the Regional Office in their brief as follows:

"Mr. Bielec's appeal to the Philadelphia Regional Office and to the Board of Appeals and Review of the Civil Service Commission was denied on September 17, 1965, on a finding that the Commission lacked jurisdiction because the reassignment from Job No. CR–36–S was not a reduction in rank. Mr. Blisard's appeal to the Philadelphia Regional Office and to the Board of Appeals and Review of the Civil Service Commission was denied on January 12, 1966, on findings that the reassignment was a reduction in rank; was accomplished in accordance with the procedural requirements of Subsection 752.202 of the Commission's Regulations; was not arbitrary, unreasonable, on capricious; and was for such cause as to promote the efficiency of the service. Mr. Van Buskirk's appeal to the Philadelphia Regional Office and to the Board of Appeals and Review of the Civil Service Commission was denied on July 27, 1966, on the grounds that the reassignment was a reduction in rank but was accomplished in accordance with the procedural and substantive requirements of Part 752, Subpart B, of the Civil Service Regulations. Mr. Mukhalian's appeal to the Philadelphia Regional Office and to the Board of Appeals and Review of the Civil Service Commission was denied on July 27, 1966, on a finding that the reassignment was a reduction in rank that was accomplished in accordance with the procedural requirements of Subsection 752.202 of the Commission's Regulations. Mr. Schooley's appeal to the Philadelphia Regional Office and to the Board of Appeals and Review of the Civil Service Commission was denied on July 27, 1966, on a finding that the reassignment was a reduction in rank that was accomplished in accordance with Subsection 752.202 of the Commission's Regulations and was not arbitrary, unreasonable, or capricious. Mr. Sitley's appeal to the Philadelphia Regional Office and to the Board of Appeals and Review of the Civil Service Commission was denied on July 27, 1966, on a finding that the reassignment was a reduction in rank accomplished in accordance with the procedural requirements of Subsection 752.202 of the Commission's Regulations. Mr. Steinman's appeal to the Philadelphia Regional Office and to the Board of Appeals and Review of the Civil Service Commission was denied on April 7, 1966, on a finding that both agencies of the Commission lacked jurisdiction since the action was not an adverse one."

The plaintiffs appealed from the decisions of the Regional Office to the Board of Appeals and Review, which affirmed the decisions of the Regional Office. The plaintiffs then filed this suit and have moved for a summary judgment. The defendant has filed a cross motion for summary judgment. The case has been briefed and argued before the court by the parties.

The plaintiffs base their whole case for entitlement to the indicated higher positions and grades on Chapter 335, Subchapter 4–3b, of the Federal Personnel Manual "Promotion Procedure," which provides as follows:

Promotion to positions ungraded without significant change in duties and responsibilities.

An agency must provide for an exception to competitive promotion procedures to allow for the promotion of an incumbent of a position which has been upgraded without significant change in duties and responsibilities on the basis of either the issuance of a new classification standard or the correction of a classification error. If the incumbent meets the legal and qualification requirements for the higher grade, he must be promoted non-competitively unless removed from the position by appropriate personnel action.

The contentions of the plaintiffs are set forth in their brief as follows:

"1. Mr. Bielec, a GS–11, contends that he should have been promoted to

GS–12 in the position of Chief, Plant Clearance Branch, a GS–12 job, because he had served in it from April 20, 1964, to June 8, 1965, and was serving in it when it was upgraded on April 15, 1965, to GS–12 without any significant change in duties and responsibilities.

"2. Mr. Blisard, a GS–12, contends that he should have been promoted to GS–13 in the position of Chief of the Control Branch of his Division, a GS–13 job, because he had served in it from April 20, 1964, to September 12, 1965, and was serving in it when it was upgraded to GS–13 without any significant change in duties and responsibilities.

"3. Mr. Van Buskirk, a GS–13, contends that he should have been promoted to GS–14 in the position of Deputy Director of the Production Directorate, a GS–14 job, because he had served in it from April 20, 1964, to September 12, 1965, and was serving in it when it was upgraded to GS–14 without any significant change in duties and responsibilities.

"4. Mr. Mukhalian, GS–13, contends that he should have been promoted to GS–14 in the position of Chief, Financial Services Division, a GS–14 job, because he had served in it from April 20, 1964, to September 5, 1965, and was serving in it when it was upgraded to GS–14 without any significant change in duties and responsibilities.

"5. Mr. Schooley, a GS–12, contends that he should have been promoted to GS–13 in the position of Chief, Price/Cost Analysis Branch, a GS–13 job, because he had served in it from April 20, 1964, to September 12, 1965, and was serving in it with it was upgraded to GS–13 without any significant change in duties and responsibilities.

"6. Mr. Sitley, a GS–14, contends that he should have been promoted to GS–15 in the position of Deputy Executive Director, a GS–15 job, because he had served in it and the Executive Director's job from April 20, 1964, to September 15, 1965, and was serving in it when it was upgraded without any significant change in duties and responsibilities.

"7. Mr. Steinman, a GS–9, contends that he should have been promoted to GS–11 in the position of Plant Clearance Officer for the region of Western Pennsylvania and Pittsburgh area, a GS–11 job, because he had served in it from April 20, 1964, to July 29, 1965, and was serving in it when it was upgraded without any significant change in duties and responsibilities."

The defendant says that the above-quoted promotion procedure in the Federal Personnel Manual does not apply in this case for various reasons. It contends that the positions held by the plaintiffs in DCASR as of November 1, 1964, were temporary in nature because the positions themselves were temporary and had not been permanently established. The positions were not made permanent until the issuance of the Joint Table Distribution on April 15, 1965. Thus, it was a two-phased program involving first the people, such as plaintiffs, serving on temporary detail, and, secondly, the people who were later placed in the positions when they were permanently established. This was the holding of the court in Cohen v. McNamara, 282 F.Supp. 308 (E.D. Pa.1968), where this identical reorganization was involved. There the court said:

\* \* \* Since the transfers of functions involved in the case at bar were two phased—the first involving all those people initially identified with the transfer and the second involving all those people subsequently identified with the transfer—plaintiff's assignment to the position of Chief as of November 1, 1964, was temporary in nature in that it was subject to change depending upon the rank and grade of those people subsequently identified with the second phase of the transfer of functions. Plaintiff's assignment to the position of Chief being temporary in nature, he was not deprived of any

rights when he was thereafter reduced in rank in the course of the second phase of the transfer of functions since transfer of function regulations were complied with in that plaintiff retained the same grade rating and same pay level. [*Id.* at 312.]

We agree with this statement of the court in that case. All of the plaintiffs were working in temporary positions which they agreed to accept on November 1, 1964. These positions were subject to change and grade as the program progressed until the final reorganization took place on April 15, 1965. The disappointment of plaintiffs is understandable, but this was unavoidable. The court in the above case put it this way:

It is self-evident that a reorganization involving the consolidation of the personnel of four Contract Administration Agencies cannot be accomplished without readjustments which may prove unpalatable to some of the affected personnel. [*Id.* at 314.]

■ Before the plaintiffs could have any rights under the regulation to noncompetitive promotion, they must show that they were the permanent incumbents of permanently established positions, and that the positions have been reclassified upward without any change in the duties or responsibilities of the positions. Defendant says these prerequisites have not been met by the plaintiffs here. We agree. None of them were the permanent incumbents of permanently established positions. Furthermore, the positions sought by the plaintiffs Blisard, Van Buskirk, Mukhalian, Schooley and Sitley were found by the Commission to be new and different positions to those temporarily held by such plaintiffs and involved different duties and responsibilities. These plaintiffs dispute this, but in the absence of an allegation and showing that the action of the Commission was arbitrary or capricious, which has not been made here, we cannot question the determination of

the agency that new and different positions were created by a reorganization. 5 U.S.C. § 706; Cutting v. Higley, 98 U.S. App.D.C. 288, 235 F.2d 515 (1956); Wagner v. Higley, 98 U.S.App.D.C. 291, 235 F.2d 518 (1956); and Armstrong v. United States, 405 F.2d 1275, 186 Ct.Cl. 539 (1969), cert. denied, 395 U.S. 934, 89 S.Ct. 1997, 23 L.Ed.2d 449. As to the plaintiffs Bielec and Steinman, the Commission. found that the positions to which they were assigned were practically the same as the positions they had formerly held and that they suffered no reduction in rank.

None of the plaintiffs suffered any reduction in grade or pay. Five of them were reduced in rank (all but Bielec and Steinman). However, the Commission found that where the reduction in rank occurred, all procedural requirements were complied with and it was done for the good of the service. This has not been questioned by the plaintiffs and it is entitled to finality.

■ The plaintiffs contend that their positions were upgraded by being reclassified without any change in duties or responsibilities. The defendant counters by saying the positions were not upgraded by a reclassification but were different positions by reason of a reorganization. The determinations of the Commission support the position of the defendant. Reorganization of government positions is peculiarly within the authority and discretion of agency officials. *See* Keener v. United States, 165 Ct.Cl. 334, 341 (1964); Adams v. United States, 137 Ct.Cl. 52, 53 (1956), cert. denied, 353 U.S. 977, 77 S.Ct. 1059, 1 L.Ed.2d 1137 (1957). Such a reorganization will not be disturbed by the courts if the action is not arbitrary or capricious. Umbeck v. United States, 149 Ct. Cl. 418, 428 (1960). Furthermore, the courts will not disturb the determinations of the agency with regard to the selection of personnel to fill the newly created and higher graded positions brought about by the reorganization.

Harris v. United States, 153 Ct.Cl. 425 (1961).

█ Any claims that plaintiffs have by reason of serving in an acting capacity in jobs prior to the permanent reorganization set forth in the Joint Table, on the theory they were similar to the permanent positions established in the final reorganization, must be denied. It is well-settled that service by a government employee in an acting capacity does not entitle him to permanently occupy that position nor to receive the salary incident thereto, as his rights and salary are based solely on the position to which he has been officially appointed. *See* Ganse v. United States, 376 F.2d 900, 180 Ct.Cl. 183, 186, (1967); Price v. United States, 80 F.Supp. 542, 543, 112 Ct.Cl. 198, 200 (1948); Coleman v. United States, 100 Ct.Cl. 41 (1943); Dvorkin v. United States, 101 Ct.Cl. 296 (1944), cert. denied, 323 U.S. 730, 65 S.Ct. 66, 89 L.Ed. 586; Amundson v. United States, 120 F.Supp. 201, 128 Ct. Cl. 80 (1954); and United States v. McLean, 95 U.S. 750, 24 L.Ed. 579 (1877). In the case before us, the plaintiffs were government employees but they had never been officially appointed to the positions they seek.

█ Finally, the plaintiffs have not alleged nor shown that the actions and determinations of the Civil Service Commission were arbitrary or capricious, an abuse of discretion, contrary to a statute, contrary to lawful procedure, unsupported by substantial evidence, or otherwise not in accordance with law within the meaning of 5 U.S.C. § 706. Under such circumstances, the actions and decisions of the Commission are entitled to finality and must be upheld. Armstrong v. United States, *supra*; and Albert v. United States, 437 F.2d 976, 194 Ct.Cl. 95 (1971).

Accordingly, plaintiffs are not entitled to recover. The motions for summary judgment of plaintiffs are denied and that of defendant granted, and plaintiffs' petitions are dismissed.