Milton James BRECH et al., Plaintiffs,

v.

UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE and United States of America, Defendants.

69 Civ. 3902.

United States District Court, S. D. New York.

Aug. 23, 1973.

Elmer Fried, New York City, for plaintiffs.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, for defendants; Taggart D. Adams, Asst. U. S. Atty., of counsel.

## OPINION

MacMAHON, District Judge.

These are cross-motions for summary judgment on one statement of stipulated facts. Plaintiffs, all employees of the Immigration and Naturalization Service (INS), have challenged the methodology and the timing employed by the defendants in re-classifying their employment level as violative of the pertinent sections of the United States Code (5 U.S. C. § 5101 et seq.).

The complaint originally alleged five claims and sought class action determination. Several of the claims therein have now been mooted or withdrawn, and it appears that the action is reduced

to a claim by the individual plaintiffs, Brech and Fishman (now Roy) for correction of their records to show appointment to employment grade GS–11 from GS–9 on either April 3, 1967 (the day plaintiffs filed a request for on-site position audits for the purpose of reclassifying their positions) or April 30, 1969 (the day the Civil Service Commission ordered the standards sought by plaintiffs implemented) and for back pay from either of those dates to October 22, 1969 (the day plaintiffs were formally classified and paid at the GS–11 grade).

Plaintiffs were employed as Immigrant Inspectors and classified under the Immigrant Inspector Series GS–1816. One of the plaintiffs was a GS–9 on April 3, 1967 and the other was soon to be promoted. They, along with fourteen other inspectors, filed a classification appeal with the Civil Service Commission (CSC) on that date. The Regional Office of the CSC accepted the appeal by letter dated April 7, 1967. The CSC requested plaintiffs' employer, INS, to provide certain information regarding the positions and classifications of the plaintiffs. INS supplied the information by letter dated April 28, 1967. Various communications followed, including a letter from plaintiffs' attorney setting forth for the first time a request for the CSC to review the entire published classification standards for Immigrant Inspectors.

Plaintiffs' attorney wrote to the CSC on March 4, 1968 stating that the appellants agreed to having their classification appeal held "in abeyance pending the outcome of a survey presently being conducted by the Civil Service Commission. . . . " The survey referred to was one of the entire Immigration Inspector occupations undertaken by the CSC at the request of the Department of Justice. During 1968, the CSC survey proceeded apace and included fact-finding surveys at various locations throughout the United States and consultations with officers of the INS and with Immigrant Inspectors such as the plaintiffs.

After the surveys and other collection of information, the CSC proposed a completely new classification standard to replace the one which had been in effect since 1959. The tentative draft of the new standard was released by the CSC on February 4, 1969 and was circulated to various persons including the plaintiffs.* Based on comments and review of the tentative standards, the CSC issued new final standards for the GS–1816 occupation on April 30, 1969. These final standards included some changes from the tentative standards.

Following the promulgation of the new standards for Immigration Inspectors and Examiners on April 30, 1969 (which covered grades GS–4 through GS–11), six advance copies were forwarded to the Department of Justice on May 12, 1969. Further copies were not received until July 7, 1969; those copies were immediately distributed and reviewed by the central office of INS in Washington and the regional offices. On-site audits of the individual plaintiffs' jobs were undertaken in August 1969, and on October 22, 1969 the plaintiffs, with others, were promoted to the GS–11 level as Immigrant Examiners.

The record indicates that a review of some 1230 individual Immigration Inspector and Examiner positions was required. Responding to an inquiry by Congressman Fascell as to the length of time between the promulgation and the implementation of the new standards, INS Commissioner Farrell, in a letter dated October 14, 1969, noted that:

"[T]he complexities of this review were compounded by the fact that these positions are located in approximately 220 different Service offices throughout the country, including locations in Nassau, San Juan, Guam,

---

* There is, in fact, a letter in the record, signed by two of the plaintiffs, commending the development of the tentative standard.

Montreal, Vancouver, Honolulu and Alaska. Further compounding our study was the fact that the Service was under a mandate from the Civil Service Commission to prepare revised position descriptions for positions in this occupation."

The CSC has received a congressional mandate to develop and administer a system for the classification and grading of employees of the federal government. 5 U.S.C. §§ 5103, 5112. That mandate, in the "purpose" section, contains a directive that "the principle of equal pay for substantially equal work will be followed." 5 U.S.C. § 5101[1][A].

Two other specific directives to the CSC are pertinent. The first is that each position shall be placed in the appropriate class and grade based upon "the level of difficulty, responsibility and qualification requirements of the work." 5 U.S.C. § 5106. The second is that each agency "*shall*" classify its employees "in conformance with standards published by the Civil Service Commission." 5 U.S.C. § 5107.

Plaintiffs claim that INS did not comply with these three directives and that therefore they are entitled to back pay and correction of their records.

Plaintiffs argue that they were paid at a grade far below the one at which the government later determined they had been producing. Consequently, they maintain, they received the same pay as other Immigrant Inspectors performing lesser tasks and received less pay than others in government service performing substantially equal work.

■ Our function here is limited, for "[i]t is not the business of courts to substitute their untutored judgment for the expert knowledge of those who are given authority to implement the general directives of Congress." Air Line Pilots Ass'n v. Quesada, 276 F.2d 892, 898 (2d Cir. 1960). Judicial review is, thus, limited to (1) determining whether there has been substantial compliance with statutory and regulatory requirements and (2) determining whether the government has acted in an arbitrary or capricious manner. McTiernan v. Gronouski, 337 F.2d 31, 34 (2d Cir. 1964).

■■ The consistent answer of the courts as to whether acts such as those complained of here were subject to judicial review has been that:

"Plaintiff is entitled to no more than the salary of the office to which he was appointed, *whether or not he performed the duties of an office of a higher grade.*" Coleman v. United States, 100 Ct.Cl. 41, 42 (1943) (Emphasis added.).

This principle was recently quoted with approval in Chambers v. United States, 451 F.2d 1045, 196 Ct.Cl. 186 (1971). See also Ganse v. United States, 376 F. 2d 900, 180 Ct.Cl. 183 (1967); Price v. United States, 80 F.Supp. 542, 112 Ct.Cl. 198 (1948). It has also been held that even where an employee is serving in an acting capacity he is not entitled to receive the salary of the job he is performing until he is officially appointed. Bielec v. United States, 456 F.2d 690, 197 Ct.Cl. 550 (1972).

■ True, the cited cases do not discuss the equal pay-equal work statutory mandate, but we do not think that fact weakens their applicability here. Moreover, here the fact that plaintiffs were actually promoted to GS–11 (after initiating administrative review or appeal) indicates compliance with the statutory and regulatory mandate. The measures and length of time taken by the agencies to effectuate plaintiffs' promotions are properly reserved to the agencies' discretion. Further, the fact that the agencies found plaintiffs' proper level for the same work to be higher on October 22, 1969 than on October 21, 1969 is not dispositive because it cannot be viewed out of the context of a fast-changing economy and work environment and related problems which are specifically decreed to be the concern of the agencies here involved.

We have examined the record and steps taken by the agencies in much

greater detail than has been referred to above, and we find no evidence whatever of arbitrariness or capriciousness on the part of either INS or CSC.

Plaintiffs rely most heavily upon Chambers v. United States, *supra*. *Chambers* involved a suit against the government for retroactive pay by an applicant for federal employment who was denied a position due to racial discrimination but subsequently hired after an appeal to the Director of Equal Employment Opportunity. The court held that the plaintiff was entitled to retroactive pay from the date she should have been hired. Central to the opinion was that all discretionary findings had already been made at the executive level:

"Here we are neither reviewing a discretionary act nor performing one. The executive agency has already made the determination that but for the unlawful discrimination, plaintiff would have been hired on March 17, 1967. We are not asked to speculate even as to the grade, salary, or the date. Our only function here is to ascertain the plaintiff's rights which flow from that determination." 451 F.2d at 1051.

The court also noted, at 451 F.2d 1055, that there is no difference between an old employee not promoted and a new employee not hired. In any event, reliance on *Chambers* here is misplaced.

It was not until April 30, 1969 that the CSC found that some Immigration Inspector job positions were entitled to a GS–11 salary level. Prior to that time, the CSC had been involved in determining what the final standards should include. After April 30, 1969, it was up to INS to determine who should be classified in each grade. The specific findings that plaintiffs were entitled to GS–11 ratings were not made until after INS had completed its survey and implementation operation, which included re-

view of the new standards and on-site audits of plaintiffs' positions. Clearly, then, plaintiffs were not in the position of Mrs. Chambers until October 22, 1969 when the review was completed and they were promoted; *i.e.*, only by October 22, 1969 had "the executive agency . . . already made [its] determination." Chambers v. United States, *supra*, 451 F.2d at 1051.

■■ Plaintiffs' argument that they were doing substantially the same work from 1967 onward is simply irrelevant. We briefly note again that there are obviously many other factors [2] bearing on an agency's decision to re-classify. The fact that those factors had not been completely considered by the agency at the time for which plaintiffs make claim for higher pay, as they *had* been in *Chambers* by the time period targeted for back pay by Mrs. Chambers, underscores the inapplicability of the dictum in *Chambers* relating to the indistinguishability between an old employee not being promoted and a new employee not being hired.

■ Plaintiffs' contention that all the necessary findings relating to their individual promotions had been made by March 1969 is simply not supported by the record. Necessarily there could not be a sufficient factual basis for the agency's finding that the individual plaintiffs were entitled to a GS–11 grade until after the on-site audits were conducted in August.

■ Plaintiffs' final point addresses itself only to the time period between April 30, 1969, when the CSC promulgated the final standards, and October 22, 1969, when plaintiffs were promoted from GS–9 to GS–11. They claim that the delay was in violation of 5 U.S.C. § 5107, which provides that each agency "*shall*" classify its employees in conformance with standards published by the CSC. Plaintiffs seek retroactive

2. Some of the factors necessarily considered by the CSC were the changing value of the work in question to the agency, the supply of qualified people, govern-mental budget restrictions and variations; whereas these factors are so fluid, there can be no doubt that they are best handled by the expert agency.

pay for this "most blatant" violation of six months' duration.

The government admits that "upon publication of final standards for a position, it is mandatory for an agency to take action to place positions that will meet those standards in the proper class and grade." (Answer, ¶¶ 4 and 5.) This comment, however, is not, as interpreted by plaintiffs, an admission by the government that plaintiffs were legally entitled to their promotions before October 22, 1969.

It should be clear from our earlier discussion that there are certain functions that must be executed after the final standards are promulgated and before all persons to be affected receive their raises, *i.e.*, the actual application of the standards to the currently structured positions of employees currently holding those positions. Obviously, these functions will vary in time requirements from situation to situation. No general rule can be applied except to say that dilatory action by the affected agency cannot be tolerated.[3] Absent such a showing, the record fails to show any "stalling" or other dilatory action by INS. We hold that administrative actions to implement the new standards must be taken within a reasonable time. *Cf.* 37 Comp.Gen. 492, 495.

Under all the circumstances present here, especially the number of positions that needed to be audited and their geographical divergence, we find that a period of just under six months was reasonable. Consequently, there was no violation of the statute's mandate.

We note in conclusion that our holding against plaintiffs' claims is consonant with that in a case identical to this (involving plaintiffs' colleagues) in the Southern District of Florida:

"After some research it boils down to the proposition that there is a duty under these regulations [5 U.S.C. §§ 5101 et seq.) to determine within a reasonable period of time who is entitled to this upgrading, who is entitled to go from a 9 to an 11. There is a duty to do that and do it reasonably, but there is no law that says once done the effective date goes back to the date of approval of the standards. As a matter of fact what little we could find was to the contrary." Holtan v. U.S. Immigration & Nat. Serv., Docket No. 69–1089–Civ–JE (S.D.Fla., Aug. 13, 1970).

Accordingly, defendants' motion for summary judgment, pursuant to Rule 56, Fed.R.Civ.P., is granted in all respects and the complaint is dismissed. Plaintiffs' cross-motion is denied in all respects.

So ordered.

---

3. Title 5, United States Code, Section 5111, gives the CSC authority to revoke an agency's power to classify positions if the agency is not acting in conformance with published standards.