**Francis P. McCOURT, Appellant,**

v.

**Robert E. HAMPTON et al., Appellees.**

**No. 74–1661.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 9, 1975.

Decided May 6, 1975.

**1366**

Robert M. White, Norfolk, Va. (White & Selkin, Norfolk, Va., on brief), for appellant.

Michael A. Rhine, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on brief), for appellees.

Before WINTER, CRAVEN and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

When his commanding officer, Colonel John R. Adie, sought to promote Francis P. McCourt, plaintiff, a civilian employee of the United States Army Aviation Systems Command, to the position the duties of which he was actually performing, Colonel Adie unfortunately set in motion a series of administrative decisions which resulted in abolition of the position McCourt then held and in his transfer to another carrying a substantial diminution in compensation.[1] This bizarre result stemmed from the Army's determination that McCourt's position and duties merited GS–15 compensation, but only for an engineer. McCourt had filled the position and performed the duties with great distinction, but he had no engineering degree.

Although the district court sustained the administrative action in a suit by McCourt to obtain restoration of his old position, as reclassified, and for back pay and other damages, we conclude that McCourt was denied his statutory right of notice of proposed adverse action before such action was taken. Accordingly, his transfer and demotion cannot stand. We conclude further that there was no substantial evidence to support the Civil Service Commission's decision that McCourt's position, prior to the abortive effort to promote him, had been upgraded with significant change in duties and responsibilities. Therefore, for this reason also, the treatment he received from the Department of the Army (DA) and the Civil Service Commission cannot be sustained. In accordance with established procedures, McCourt should have been promoted to Chief, Safety and Survivability Division,

---

1. Initially plaintiff was purportedly transferred to another position comparable in salary to the one he previously held, but the new position · was soon abolished and plaintiff reduced in grade from GS–14 to GS–11.

GS–301–15 level. We reverse the district court and direct that he be granted substantially the relief that he prayed.

## I.

The district court made extensive findings of fact. We do not question the accuracy of the findings and we deem it unnecessary to set forth more than the salient ones.

The beginning point in this litigation was the desire to promote McCourt, first, so that he could be compensated according to his true worth and, second, to regularize his employment within existing specifications for the position he held. Since 1966, he had acted as Chief, Safety and Survivability Division of the Army Aviation Materiel Laboratories (AVLABS) at Fort Eustis, Virginia; he was a nationally and internationally recognized expert in the area of aircraft safety and personnel protection in the event of aircraft crashes. His prior military service entitled him to the protections of the Veterans Preference Act of 1944.

The specifications for the position he held required that the incumbent be an aeronautical engineer (the 861 series), and the position was assigned the grade GS–861–15. McCourt lacked an academic degree; and although it was recognized that he filled the position with distinction, receiving national and international rewards, he was technically employed as a supervisory military planning officer and transportation specialist (the 2101 series) with a grade of GS–2101–14.

To achieve these dual objectives, the Civil Service Commission was asked to reclassify McCourt for grade GS–861–15 on the basis of his singular personal qualifications despite his lack of degree. Although the Commission refused this request, ultimately it did certify him as qualified for appointment to GS–15 (presumably for a series without specific educational requirements). AVLABS personnel analysts concluded that McCourt could be reclassified as Research and Development Administrator in the 301 series for which he was qualified, at grade GS–301–15. This action was strongly endorsed by Colonel Adie, McCourt's commanding officer at AVLABS, and General Klingenhagen, Colonel Adie's superior, and the proposal was forwarded to Army Materiel Command.

General Miley, of Army Materiel Command, rejected the proposal, obviously unaware that the Civil Service Commission had certified McCourt as eligible for a GS–15 appointment some ten days earlier. General Miley said that while McCourt's achievements merited promotion if promotion were possible in accordance with DA and Civil Service Commission policies, McCourt was not qualified as an engineer, and the administrator classification recommended by Colonel Adie and General Klingenhagen "cannot support the GS–15 level." Because of his lack of knowledge, General Miley added that "[s]hould Mr. McCourt achieve appropriate eligibility for a GS–15 position," a promotion might be subsequently considered.

Chronologically, the next step was that, over McCourt's objection, he was reassigned to a defunct position as a Research and Development Administrator, GS–301–14. He was later demoted to GS–11. He appealed the proposed decision to assign him, and a Grievance Examiner of DA upheld McCourt on every point. Specifically, the Grievance Examiner held that McCourt's position was properly classified as GS–301–15 and that McCourt was qualified for that series and position and entitled to it. When the findings and recommendations of the Grievance Examiner were placed before General Klingenhagen, the latter rejected them, stating in a contemporaneous letter that he could not under any circumstances "render a decision promoting McCourt to a GS–15 . . . as I have no authority to overrule a decision rendered by General Miley." Thus, in spite of his earlier "very strong personal appeal" that McCourt be promoted, General Klingenhagen rejected the recommended promotion and McCourt was

retained in the defunct position and thereafter demoted.

McCourt then appealed to the Philadelphia Region of the Civil Service Commission. Its Trial Examiner viewed the case as presenting the issue of whether "the reassignment . . . was a proper exercise of the department's discretion in managing its positions and manpower so as to accomplish its mission." The Trial Examiner upheld the Army's action on the ground that the duties of McCourt's former position had been functionally changed, and that a "different level of performance . . . ," with particular emphasis on professional engineering, was now part of the position which McCourt had formerly performed. The examiner concluded that since the Army meant to change the job itself as well as change the classification numbers assigned to it, the Army's action was "not unreasonable, arbitrary or capricious" and was taken "for such cause as would promote the efficiency of the service." The examiner was sustained on an administrative appeal within the Commission.

## II.

Fully aware of the limited scope of judicial review, *see, e. g.,* Halsey v. Nitze, 390 F.2d 142 (4 Cir.), cert. denied, 392 U.S. 939, 88 S.Ct. 2316, 20 L.Ed.2d 1399 (1968), we see two fatal errors in the administrative proceedings which require that McCourt be given substantially the relief he prayed. First, we conclude that McCourt was not afforded the statutory notice of his transfer to the defunct position to which he was entitled as a veteran protected by the Veterans Preference Act of 1944, 5 U.S.C. §§ 851 et seq.; and, second, we conclude that since there was lacking substantial evidence to show that the position occupied by McCourt had been functionally changed, the decision of the Civil Service Commission sustaining McCourt's transfer and subsequent demotion must be set aside, and the government must be directed to give effect to an internal regulation under which McCourt was entitled to promotion.

A. As a veteran entitled to protection of the Veterans Preference Act, McCourt was entitled to notice of adverse action proposed to be taken against him. 5 U.S.C. § 7512(b)(1). The purpose of the notice is, of course, to afford him an opportunity to counter the proposed action and to persuade those having authority to take it to do otherwise. 5 U.S.C. §§ 7512(b)(2), 7701; Federal Personnel Manual, Ch. 752, ¶ A2–2 et seq.; 5 C.F.R. §§ 752.201 et seq.

Manifestly, such notice is inadequate if, at the time it is given, it is not notice of *proposed* action but is notice of a final decision. Stringer v. United States, 90 F.Supp. 375, 379, 117 Ct.Cl. 30 (1950). The notice given McCourt falls into the latter category because General Klingenhagen, who gave notice of what was purported to be proposed action, deemed General Miley's letter to foreclose adoption of the Trial Examiner's recommendation. This letter was written prior to proceedings before the DA examiner and in apparent ignorance of the decision of the Civil Service Commission that McCourt could be promoted to GS–15. Ordinarily there would be a strong presumption that General Klingenhagen, as the person authorized to act, discharged his duty and decided the case on the merits. But this is the rare case in which there is irrefutable evidence in writing from General Klingenhagen that he could give no weight and no credence to the hearing proceeding, to the thoughtful and detailed report and recommendation of the DA examiner, or to McCourt's proofs and arguments to counter the "proposed" action. "[U]nder no circumstances" could he "overrule" General Miley. We think that it follows that McCourt was transferred and subsequently demoted in violation of his statutory rights and that this administrative action must be set aside.

If this were the only defect in the proceedings, McCourt, at most, would be entitled to an administrative redetermi-

nation of the propriety of his transfer to a defunct position and subsequent demotion and back pay for the intervening period.[2] But there is more.

B. Chapter 35, subchapter 4–3b, of the Federal Personnel Manual, "Promotion Procedure," provides as follows:

An agency must provide for an exception to competitive promotion procedures to allow for the promotion of an incumbent of a position which has been upgraded without significant change in duties and responsibilities on the basis of either the issuance of a new classification standard or the correction of a classification error. If the incumbent meets the legal and qualification requirements for the higher grade, he must be promoted noncompetitively unless removed from the position by appropriate personnel action.[3]

McCourt not only occupied the position to which he was sought to be promoted, he occupied it with distinction. The Civil Service Commission has held him eligible to promotion to GS–15, and the DA Grievance Examiner determined, on the basis of the above regulation, that McCourt should be classified GS–301–15, to perform the "new" position. It follows that he must be promoted noncompetitively unless (a) the upgrading of his position, i. e., assignment from a technical classification on which he was paid, to his actual classification, the duties of which he performed, involved a significant change in duties and responsibilities, or (b) he was removed from the position by appropriate personnel action. We have shown that the latter has not been accomplished. With respect to the former, the record is totally devoid of any evidence to indicate that it was ever

thought that McCourt, or the incumbent of the new position, would be called upon to perform new duties or to shoulder new or additional responsibilities other than those which had theretofore been performed or shouldered by McCourt. Indeed, as will be shown, the evidence is all to the contrary.

Before the Grievance Examiner, two witnesses were adduced to support the denial of McCourt's promotion to Grade 15 in the 301–Administrator series. One of these, Mrs. Ottolini, a personnel analyst from General Klingenhagen's office, acknowledged that she had supported the promotion and suggested classification before General Miley's letter denied it. The other, Mr. Willhite, a personnel analyst from Army Materiel Command, explained the process behind General Miley's decision.

This process, according to Mr. Willhite, took no account whatever of Mr. McCourt's peculiar qualifications. The principle upon which denial of promotion rested was, solely and explicitly: professionals (those with academic degrees) must supervise others with degrees. Neither General Miley's letter nor Mr. Willhite's explanation suggests a change in duties. Of equal significance is the fact that neither adduces any basis for the principle asserted. Upon examination before the Grievance Examiner, Willhite was not able to produce any hard rule to this effect, nor was he able to assert that any such rule was in effect throughout the DA, nor was he able to distinguish persuasively situations in which personnel regulations explicitly mandate reference to the peculiar qualifications of a particular candidate. Perhaps most significantly, change in duties

---

**2.** *See* Horton v. Orange County Board of Education, 464 F.2d 536, 538 (4 Cir. 1972).

**3.** For some unexplained reason, the parties have not seen fit to provide the text of the Manual in the appendix or in their briefs. The text is quoted in Bielec v. United States, 456 F.2d 690, 693, 197 Ct.Cl. 550 (1972). The existence of this provision of the Manual is referred to in the report of the DA Grievance Examiner in the instant case, where he stated:

The incumbent of a position which is known to warrant up-grading without significant change in job content is, if eligible for promotion, entitled to the grade for the work he has been performing. His re-assignment to a position of lower grade value is a reduction in rank, whether or not the up-grading decision has been put into effect at the time of the re-assignment.

is not mentioned at all in General Klingenhagen's decision.

When the Grievance Examiner determined that McCourt was entitled to promotion on the basis of the above-cited regulation,[4] a change did take place. But the change was not in the job McCourt had been doing; the change was in the grounds the Army asserted for its actions. Thus, the Civil Service Commission was presented with a brand-new, unused allegation: that McCourt's job has been changed and greater emphasis was to be placed on professional engineering.

In the face of the quoted regulation relied upon by the Grievance Examiner, the Army has abandoned its former ground (i. e., professionals must supervise professionals) and adopted one with no support whatever in the record. This posture of the case leaves the Army with no basis for denying McCourt the promotion to which the regulation entitles him.

This court has been and will be as assiduous in requiring the government to live up to regulations for the conduct of its own affairs when noncompliance results in prejudice to an adverse party, *see, e. g.*, United States v. Heffner, 420 F.2d 809 (4 Cir. 1969), as it has and will continue to be in requiring a private citizen to regulate and conduct himself and his affairs in accordance with federal law. Here, we deem it certain that McCourt should have been promoted noncompetitively to a classification no lower than GS–15. The prejudice to him of denial of the promotion and subsequent demotion is manifest. It follows that, as prayed in his complaint, he is entitled to be treated as having occupied the position of Research and Development Administrator, GS–301–15, Chief of Safety and Survivability Division, retroactive as of August 19, 1970. He should be reinstated in that position unless there is good cause, because of subsequent events, not to grant that relief. He is, of course, entitled to lost wages, to be computed by the district court.

His recovery should be measured by what he should have received, less what he actually received, to the date of judgment, or to the date of earlier retirement or resignation if it shall appear that he would have retired or resigned prior to the time of entry of judgment.

Reversed and remanded.