George Lawrence LEE, Plaintiff,

v.

William F. BOLGER, Individually and as Regional Postmaster General for the Northeast Region of the Postal Service, New York, Defendant.

No. 76 Civ. 668 (VLB).

United States District Court,
S. D. New York.

June 29, 1978.

George Lawrence Lee, plaintiff pro se.

Robert B. Fishe, Jr., U.S. Atty., S.D.N.Y., New York City, Robert B. Fiske, Jr., U.S. Atty. by Michael H. Dolinger, Asst. U.S. Atty., New York City, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

Plaintiff, a black male, was the Director, Office of Equal Employment Compliance, Northeast Region, United States Postal Service from 1971 until April 1974. The position of General Manager, Equal Em-

ployment Opportunity ("EEO") Division, Northeast Region ("General Manager") was newly created in 1973. The selection process to fill the above vacancy was a seven-month effort spanning 1973 and 1974, which resulted in the selection of one Albert J. Washington, a black male.

After the appointment of Mr. Washington to General Manager plaintiff filed an administrative complaint, alleging that the failure to promote plaintiff to the newly created position was a deliberate act of racial and sexual discrimination. A hearing was held before a Complaints Examiner, who issued findings and a recommended decision that plaintiff had failed to establish his allegation of discrimination. The United States Postal Service concurred in the findings and recommended decision, which were affirmed by the Civil Service Commission's Appeal Review Board. Plaintiff then filed this action.

Plaintiff's action is for judicial review of agency action, and for declaratory and injunctive relief pursuant to 5 U.S.C. §§ 702, 704 and 706; 28 U.S.C. §§ 2201 and 2202; 39 U.S.C. § 409; 42 U.S.C. §§ 1981 and 2000e–16(a) and (c).[1] Plaintiff also complains that he was denied due process under the fifth amendment to the United States Constitution, having been deprived of certain rights, privileges and immunities by unlawful agency action. Plaintiff seeks to set aside the agency action denying him promotion to a position within the United States Postal Service and requests that his appointment and promotion to the above position be compelled.

Jurisdiction is based upon a) 28 U.S.C. §§ 1343(3) and 1343(4),[2] b) 42 U.S.C. § 2000e–5(f)(3),[3] c) 39 U.S.C. § 409(a)[4] and d) 5 U.S.C. § 702.[5]

The parties have presented this matter for determination on stipulated facts in lieu of a trial.[6] For the reasons hereafter stated, I dismiss the complaint.

## The Selection Process

After the creation of the post of General Manager, the Assistant Regional Postmaster General announced on October 17, 1973 that Mrs. Florence Robinson, a white female, was to be appointed General Manager, effective after Christmas. Mrs. Robinson never assumed the duties of General Manager because it was determined 1) that incorrect procedures had been followed in filling the position, and 2) that Mrs. Robinson did not meet the criteria specified for the position. See Stipulation of Facts at 3 (May 12, 1977).

1. With respect to claims brought under the 1972 Amendment to Title VII, 42 U.S.C. §§ 2000e–16(a) and (c), a federal defendant may only be sued in his official capacity, not individually. See e. g., Keeler v. Hills, 408 F.Supp. 386, 387 (N.D.Ga.1975). Defendant asserts that William F. Bolger, the Northeast Regional Postmaster General, is not a proper party defendant under the Title VII claim because he is not the agency head. [Defendant's Memorandum to Support its Motion to Dismiss at 3, n. 1]. Although it may be that this objection has been waived—the Postal Service clearly has had notice of the claim and it has participated actively in the formulation of a Stipulation of Facts—any legal determination concerning this issue is unnecessary in light of the disposition of this matter.

2. The district courts have jurisdiction of any civil action brought to redress deprivations under color of State law of rights, privileges or immunities secured by the Constitution of the United States and to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

3. The district courts have jurisdiction of actions brought which allege unlawful employment practices.

4. The district courts have jurisdiction over all actions brought by and against the Postal Service.

5. A person is entitled to judicial review of a legal wrong or an adverse effect due to agency action.

6. The stipulation set forth statements of fact which are deemed to be true for the purpose of this litigation. See Stipulation of Facts at 1 (May 12, 1977). Appended to the stipulation of facts are legal and factual contentions of both the plaintiff (hereinafter cited as "Plaintiff's Contentions") and defendant which were not stipulated to. I conclude that even if I were to accept as true the additional facts plaintiff has proposed, the disposition of this matter would not be affected.

Written notice of the availability of the position of General Manager was then circulated under the Postal Executive Salary ("PES") Promotion System, dated November 8, 1973.[7] The circular failed to generate the submission of any nomination for the General Manager post. *See* Stipulation of Facts at 3 (May 12, 1977). As in the case of Mrs. Robinson's abortive appointment, this method of filling the vacancy was determined to be irreconcilable with procedures set forth in applicable U.S. Postal Service Instructions.

Thereafter, on January 10, 1974, the vacancy for the position of General Manager was announced in the Regional Bulletin. On January 24, 1974 plaintiff applied for the position.

Following an initial screening process conducted by Mr. Pat Ciotti, Labor Relations Specialist, the names of six individuals were submitted to the Promotion Advisory Board ("the Board") for consideration as General Manager. *See* Stipulation of Facts at 4 (May 12, 1977). The plaintiff's name, and that of Mr. Washington, were included among the six. All six persons were male, and all but two were black. Each of the six candidates was interviewed by the Board, which then recommended three of them for appointment as General Manager—Mr. Washington and two others named Adams and Cureton. The plaintiff was not recommended. Mr. Washington, ranked as most qualified by the Board, was appointed to the position, assuming his duties on April 1, 1974.

The documents submitted to the Board with respect to Mr. Washington and Mr. Adams had contained only one supervisory recommendation each, instead of two as provided for in the applicable U.S. Postal Service Instructions. The Postal Service's explanation for this deviation from prescribed procedure was that their immediate supervisor, one Mr. McKay, was himself a candidate for the position of General Manager, and would have had a conflict of interest. *See* Stipulation of Facts at 5 (May 12, 1977).

## The Post-Appointment Reprisals

On April 4, 1974, three days after Mr. Washington assumed his duties as General Manager, plaintiff received a so-called Letter of Direction.[8] On April 24, 1974, plaintiff filed an EEO complaint concerning the issuance of this letter and by agency decision dated September 20, 1974, the issuance of the Letter of Direction was decreed an act of reprisal and ordered expunged.

On April 22, 1974, a Reduction in Force notice was issued to the plaintiff in which he was offered a position as EEO Appeals Coordinator, which was at a lower level than the position he then held. The Reduction in Force notice was subsequently withdrawn.

On August 1, 1974 plaintiff received an Advance Notice of Removal, which directed that he go on indefinite administrative leave. That Notice was withdrawn on August 22, 1974 after plaintiff filed an EEO complaint concerning it. Plaintiff was ordered reinstated to duty by agency decision dated November 6, 1974 which characterized the Advance Notice of Removal as a reprisal.

On September 27, 1974, plaintiff received a Notice of Proposed Removal, similar in content to the Advance Notice of Removal issued on August 1, 1974.

On October 22, 1974, plaintiff received a Notice of Decision terminating his employ-

---

7. The circular was titled "Position Vacancies—Regional and District Offices" and was sent to the district managers of the Northeast Region. The managers were directed to "consolidate and submit nominations for those employees whom they wish to consider in the PEX category" and to forward those nominations to the Director of the Employee Relations Divisions. Among the available positions listed was the one which plaintiff now seeks. *See* Investiga-

tive Report on EEO. Complaint of Plaintiff, Exhibit 11 (October 9, 1974).

8. The Letter of Direction was given to plaintiff "for being loud, profane, and disrespectful to the General Manager, EEO Division [Mr. Washington]." In the letter, plaintiff was "advised that such conduct will not be tolerated." *See* Advance Notice of Removal, *infra,* at 2.

ment effective November 4, 1974. However, following the above-mentioned agency decision of November 6 which dealt with the August 1 Notice, plaintiff was restored to active duty retroactive to November 5, 1974.

On November 5 and 21, 1974, plaintiff filed EEO complaints concerning, respectively, the September 27 Notice of Proposed Removal and the October 22, Notice of Decision. A hearing on these complaints took place on February 3, 1977. The Complaints Examiner, based upon the Postal Service's concession, found the notices to be reprisals. The Postal Service concurred with the conclusion of the Complaints Examiner by agency decision dated April 14, 1977, and ordered the Notice of Proposed Removal and the Notice of Decision expunged from plaintiff's records.

I.   *The Title VII Claim*

Plaintiff complains that his non-promotion to the position of General Manager was a deliberate and intentional act of racial and sexual discrimination.

42 U.S.C. § 2000e–16(a) provides in relevant part:

All personnel actions affecting employees . . . in the United States Postal Service . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin.

With respect to unlawful employment practices, 42 U.S.C. § 2000e–2(a) provides:

It shall be an unlawful employment practice for an employer—

9. Plaintiff relies upon the prima facie test formulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The *Green* test, however, was applied in an action where defendant alleged racial discrimination in the employer's *failure to rehire* him. The initial burden to establish a prima facie case of discrimination under these circumstances is met when the complainant shows:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualification, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.[13]

(1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . . .

Plaintiff asserts that he has proved his prima facie case of racial discrimination; that the burden has shifted to the employer to come forth with legitimate nondiscriminating reasons for plaintiff's non-promotion; and that the defendant's explanations are unsatisfactory.

■   The proper standard for prima facie proof required from the complainant in cases of failure to promote is found in *Pettit v. United States,* 488 F.2d 1026, 1033, 203 Ct.Cl. 207 (1973):[9]

[A] prima facie case of failure to promote because of racial discrimination is made by showing: (i) that plaintiff belongs to a racial minority, (ii) that he was qualified for promotion under defendant's on-going competitive promotion system, (iii) that he was not promoted, and (iv) the supervisory level employees having responsibility to exercise judgment under the promotion system betrayed in other matters a predisposition towards discrimination against members of the involved minority.

I find that plaintiff has not met his prima facie burden under the Title VII claim.

(The *Green* court in its footnote 13 recognized that as the facts vary in Title VII cases, so may the requirements of the prima facie burden. *Green, supra,* 411 U.S. at 802, 93 S.Ct. at 1824.)

Even though plaintiff relies on the *Green* test, he misrepresents an important element. Plaintiff substitutes words of his own choosing and would prefer the standard to read: that although a member of a racial minority was qualified for the job for which the employer was seeking applicants "he was rejected for the position in favor of less qualified persons." *See* Plaintiff's Reply at 5 (June 3, 1977). Since I find an appropriate *prima facie* test for the *failure to promote* in *Pettit v. United States, supra,* plaintiff's own formulation is rejected.

Of the six individuals considered for the position of General Manager, of which plaintiff was one, all were male and four were black. The Promotion Advisory Board then recommended three of these individuals, all black. Mr. Washington was ranked most qualified, and thereafter was appointed General Manager. This does not strike me as a predisposition to discriminate against members of the black race or male gender.[10]

■ The facts that Mrs. Robinson, a white female, was first selected for the position and was later denied the appointment does not aid plaintiff's case. The Postal Service handled the matter effectively and no injury accrued to plaintiff or others similarly situated. Also, the record does not reflect any discriminatory intent on the part of the supervisory officials in selecting Mrs. Robinson.[11] Likewise, the improper use of the PES Promotion System, which on its face does not discriminate racially or sexually, did not cause harm to the plaintiff. No nominations resulted from the use of this improper procedure.[12] Although it is true that procedural irregu-

larities were employed and finally abandoned and that certain actions designated as reprisals were taken against plaintiff, it cannot be fairly said that these happenings were racially or sexually discriminatory in intent or effect.

My next inquiry is whether or not this court is empowered to review and rule upon the agency action in question, absent a finding of racial or sexual discrimination.

■ Plaintiff would have this court compel his promotion to General Manager, thus overriding the discretionary selection of the Postal Service. It has been the rule that the promotion or non-promotion of employees within a federal agency is a matter of supervisory discretion and not ordinarily subject to judicial review. *Crowley v. United States*, 527 F.2d 1176, 1184, 208 Ct.Cl. 415 (1975). *See also Gnotta v. United States*, 415 F.2d 1271, 1276 (8th Cir. 1969), *cert. denied*, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970). For this court to determine who is best qualified to receive a promotion would be "unwarranted judicial interference with discretionary executive

---

**10.** Plaintiff makes the argument that "if the person selected for the position did not qualify for the position or suffered from the lack of some other essential requirement for qualification, it matters not that the selectee was also a member of a racial minority. As to the non-selected best qualified applicant the disparity in the standards applied for the determination of 'best qualified' was disparate treatment and thus discriminatory." Plaintiff's Reply at 5 (June 3, 1977).

Plaintiff's argument, taken as a whole, does not assert that it is a discriminatory practice against a racial minority to appoint an incompetent member to a position of authority. Rather, he champions what can be characterized as the mirror-image of the above proposition. He faults the Postal Service for inaction (that is, the failure to promote plaintiff) and not for action (the promotion of another instead of the plaintiff). Implicit in plaintiff's argument is the concept that he was best qualified and deserving of the appointment, regardless of Mr. Washington's sex or race. According to plaintiff, racial and sexual discrimination operated in such a manner as to deny him what he feels is his rightful position. Upon studying the selection process in its entirety, I cannot agree with plaintiff. The manner in which Mr. Washington was ultimately appointed simply does not demonstrate a pre-disposition of the super-

visory officials to discriminate against plaintiff's race or gender.

**11.** At the hearing on plaintiff's administrative complaint, Clifford Rowland, then the Assistant Regional Postmaster General, set forth the reasons for selecting Mrs. Robinson. Through personal contact and the opinion of "key officials in the region," Mr. Rowland had become impressed with Mrs. Robinson's qualifications and experience. *See* Hearing Transcript, January 14, 1975 at 78–80.

**12.** The defendant argues that "the attempted appointment of Mrs. Robinson and the subsequent use of the PES Promotion System cannot be the subject of a judicially cognizable claim by plaintiff because he never filed a timely administrative complaint concerning these incidents and thus failed to exhaust his administrative remedies as required by the statute [Section 717 of the Civil Rights Act of 1964, as added by § 11 of the Equal Employment Opportunity Act of 1972] *See Brown v. General Services Administration*, 425 U.S. 820 [96 S.Ct. 1961, 48 L.Ed.2d 402] (1976)." *See* Memorandum of Law in Support of Defendants Motion to Dismiss the Complaint, at 10 n.2 (May 27, 1977). This is a matter I take notice of, but need not rule upon.

action." *Crowley, supra*, 527 F.2d at 1184–85.

Judicial review is limited to 1) determining whether the employer has acted in an arbitrary and capricious manner and 2) determining whether there has been substantial compliance with statutory and regulatory requirements. *McTiernan v. Gronouski*, 337 F.2d 31, 34 (2d Cir. 1964); *Brech v. United States Immigration and Naturalization Service*, 362 F.Supp. 914, 917 (S.D.N.Y.1973).

■ Upon review of the record in its entirety, I find no arbitrariness or capriciousness on the part of the Postal Service. I also find substantial compliance with the statutory and regulatory requirements. In those situations where irregularities or reprisals did occur, the internal mechanism of the federal agency resolved those matters. With respect to the use of one rather than two supervisory recommendations submitted to the Board for Mr. Washington and Mr. Adams, I find the Postal Service's explanation satisfactory. *See* Hearing Transcript taken at plaintiff's EEO complaint hearing ("Hearing Transcript") at 228–31 (January 14, 1975).

Plaintiff claims that he was not given appropriate credit on the U.S. Postal Service Qualifications Analysis Worksheet (Form 2497) for his educational and professional degrees and his legal background.[13] On the form pertaining to plaintiff were listed his B.A., L.L.B. and J.D. degrees. Of all the candidates that possessed an undergraduate degree, none was time credited with either general or specialized experience. The instructions to Form 2497 state in part: "4. Where education is substituted for experience under the qualifications standard, enter the amount of time creditable under Substitute Education." It is not inconceivable that the supervisory officials thought this educational experience should be noted but not time-credited. Furthermore, it is not within the province of this court to pass on plaintiff's qualifications for any given post. *Powell v. Brannan*, 91 U.S. App.D.C. 16, 18, 196 F.2d 871, 873 (1952); *see also Crowley, supra.*

## II. *The 1981 Claim*

■ Plaintiff asserts a civil rights claim. 42 U.S.C. Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Only suits based on racial discrimination may be maintained under this statute. *Marshall v. Plumbers and Steamfitters Local Union 60*, 343 F.Supp. 70, 72 (E.D.La. 1972). I have concluded that no racial discrimination existed with respect to plaintiff, and that finding precludes plaintiff's § 1981 claim. *See Balderas v. La Casita Farms, Inc.*, 500 F.2d 195, 199 (5th Cir. 1974). No greater or lesser protection against discriminatory practices is provided under § 1981 than under Title VII. *Carrion v. Yeshiva University*, 535 F.2d 722, 729 (2d Cir. 1976). Furthermore, 42 U.S.C. § 2000e–16 is the exclusive individual remedy available to a federal employee complaining of job-related racial discrimination. *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), *aff'g* 507 F.2d 1300 (2d Cir. 1974).

## III. *The Due Process Claim*

■ Prior to the initiation of this action, in response to plaintiff's administrative complaint, an EEO Administrative Hearing was held. As already mentioned, a Complaints Examiner, assigned by the Civil Service Commission, presided.

At the hearing, plaintiff attempted to question a Promotion Advisory Board member on the criteria he used in evaluating the candidates for the General Manager position. The Complaints Examiner interrupted the interrogation by stating:

---

**13.** *See* Plaintiff's Contentions at 9–10 (May 12, 1977).

Again, you have been questioning the witness' evaluation of you . . . in terms of whatever criteria he used, and unless you want to relate that question to race or sex per se, which is the basis of this complaint, then I will preclude your further questioning his evaluations . . . as irrelevant and immaterial.

Hearing Transcript at 187 (Jan. 14, 1975). Plaintiff contends that the refusal by the Complaints Examiner to permit examination of the Board members with respect to criteria used to determine the "best qualified" applicants, unless related to race or sex, *per se* deprived plaintiff of a fair hearing. *See* Plaintiff's Contentions at 11 (May 12, 1977). I do not find a denial of due process.

Plaintiff characterizes his administrative complaint as being "based on the non-selection of the 'best-qualified applicant.' " *See* Plaintiff's Contentions at 11 (May 12, 1977). The administrative complaint sounded, however, in discrimination. It was proper for the Examiner to exclude questions as irrelevant that did not pertain to the ultimate issue.

IV. *The Administrative Procedure Act Claim*

Plaintiff seeks relief pursuant to 5 U.S.C. §§ 702, 704 and 706. However, the scope of the Administrative Procedure Act does not reach plaintiff's claims. 5 U.S.C. § 701(a) provides:

This chapter applies, according to the provisions thereof, except to the extent that—

\* \* \* \* \* \*

(2) agency action is committed to agency discretion by law.

Having already determined that there existed no racial or sexual discrimination adversely affecting plaintiff's non-promotion to the position of General Manager, the only issue left is the non-promotion itself. As already discussed, this is an area committed to agency discretion by law.

Plaintiff's request for relief is denied.

SO ORDERED.